HUBBARD J. GOODRICH, Appellant, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

A railroad corporation owes to its employes the same duty of inspecting the cars of another company used upon its road as if they were its own, and is responsible for the consequences of such defects as would be discovered by ordinary inspection. It must either remedy the defects or refuse to take or use the cars; and when furnished to its employes for use they have the right to assume that, so far as ordinary care can accomplish it, the cars are equipped with safe and suitable appliances.

Plaintiff, a brakeman in defendant's employ, while engaged in coupling a car received from another road to cars on defendant's track was injured. In an action to recover damages it appeared that the accident resulted from the fact that the bumper of said car was out of order so that it hung lower than the one of the car to which it was being coupled. *Held*, that defendant was chargeable with negligence.

The link in the bumper, at the time of the accident, was a straight one and plaintiff was unable to make it enter the bumper of the other car. It appeared that it was customary in coupling cars with bumpers of different heights to use a crooked link, and that such links were supplied by defendant and were in the caboose of plaintiff's train; after the accident the cars were coupled with a crooked link. *Held*, that the furnishing of such links did not fill the measure of defendant's obligation; that the duty of examination to ascertain whether the coupling appliances were in proper condition rested, in the first instance, upon the master, and in the absence of evidence to that effect it could not be presumed that it had been devolved upon plaintiff; and unless it had he had the right to assume that the master's duty had been performed.

It appeared that it frequently happens when cars come together with great force the bumpers are pressed in and such an accident as the one in question might happen, but that when cars approach each other at "ordinary speed" the bumpers receive the shock and sufficient space is left to protect the brakeman. It was claimed that the accident was one of the ordinary risks of plaintiff's employment, and so that he could not recover. *Held*, untenable, the testimony showing that the train was moving slowly at the time of the accident, and that if the bumper had been in order it would not have happened, and so, that the defective bumper was the proximate cause.

(Argued October 11, 1889; decided October 22, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, in favor of defendant,

entered upon an order made November 22, 1886, which denied a motion for a new trial and directed judgment on an order nonsuiting plaintiff on trial.

This action was brought to recover damages for injuries received by the plaintiff, a brakeman in the employ of the defendant, alleged to have been caused by defendant's negligence while engaged in coupling cars.

It appeared from the testimony that on the morning of the 17th of October, 1882, the plaintiff and other employes of the defendant were directed to go from Albany to Fishkill and take charge of a circus train which was to come upon defendant's road from the New England road. The circus train reached Fishkill about three o'clock in the afternoon, and was switched onto a side track north of the depot. In the evening, between seven and eight o'clock, the plaintiff was directed by the conductor to couple some of the cars of the circus train to some stationary cars further north on the same track, and this he proceeded to do. He stood on the east side of the track as the cars were moving north at a slow gait. It was dark and plaintiff had a lantern. When the cars to be coupled were within a few feet of each other he stepped between them for the purpose of inserting the link which was in the bumper or draw-head of the moving car into the bumper or draw-head of the stationary car. When the cars were three or four feet apart he discovered that the bumper of the moving car was lower than the bumper of the stationary car. He testified that he thought by raising the link it would enter the bumper of the stationary car. He took hold of the link with his left hand to raise it up, but found it would not enter the bumper of the stationary car. The bumper of the moving car passed under the bumper of the stationary car, and in attempting to withdraw his hand it was caught between the dead-woods and severely crushed. The dead-woods were about eight inches on each side of the bumpers. Their purpose was to prevent the cars coming together, and thus afford protection to a person standing between them. The bumper on the moving car was not broken, but hung lower

than the one on the stationary car, and lower than it was intended to hang, for the reason that the staple or strap which surrounded it, and in which it played, was broken on one side. It is customary in coupling cars of which the bumpers are of different heights to use a crooked link, and such links are supplied by the company, and were in the caboose which plaintiff and his fellows took with them from Albany to Fishkill. The link in the bumper at the time of the accident was a straight one. After the accident a crooked link was used, and the coupling was made and the car was thus used while on defendant's road. The bumpers are backed by strong springs, and it frequently happens that when the cars meet with considerable force that the bumpers are pressed in upon the springs and the dead-woods come together, but when the cars approach each other at a slow, or, as the witnesses term it, " ordinary" speed, the bumpers receive the shock and a space is left between the dead-woods of from two to eight inches. It further appeared that in making the coupling the plaintiff's hand would necessarily be between the dead-woods of the two cars.

*Amasa J. Parker* for appellant. The circus train being run on the track of the defendant, and by the defendant and in charge of the defendant's men, imposed the same responsibility upon the defendant as if it was owned by the defendant; *pro hac vice*, it was the train of the defendant. (*De Kay* v. *Erie Co.*, 33 Hun, 665; 102 N. Y. 666; *Gotlieb* v. *N. Y. & L. E. Co.*, 29 Hun, 637; 100 N. Y. 462; *Chicago* v. *Avery*, 109 Ill. 315, 318.) The defendant is liable for the defect in the car which caused the injury. The defendant was bound to furnish safe and proper machinery for the use of the plaintiff. (*Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 521; *Kain* v. *Smith*, 80 id. 458; *Flike* v. *B. & A. R. R. Co.*, 53 id. 549; *Gotlieb* v. *L. E. Co.*, 29 Hun, 640; 100 N. Y. 466; *Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 id. 547.) Having had ample opportunity the defendant was bound to know of the defect. (*Gotlieb* v. *N. Y. & L. E. R. R. Co.*,

29 Hun 640; 100 N. Y. 462, 467.)    The duty of maintaining machinery in repair for the protection and safety of employes is the same in kind as the duty of furnishing safe and proper machinery in the first instance.  (*Fuller* v. *Jewett*, 80 N. Y. 46, 53; *Ford* v. *Fitchburg Co.*, 110 Mass. 240.)   There is no ground for alleging negligence on the part of the plaintiff. (*Gotlieb* v. *Erie*, 29 Hun, 640 ; *Porter* v. *Hannibal*, 60 Mo. 160.)    When there is any evidence of defendant's negligence and of the absence of contributory negligence on the part of the plaintiff, the cases should be submitted to the jury. (*Pyles* v. *N. Y. C. R. R. Co.*, 20 Week. Dig. 394; *Fitzpatrick* v. *N. Y. & H. R. R. R. Co.*, 21 id. 169; *Nat. Bank* v. *City Bank*, 103 U. S. 658; *Ryan Case*, 37 Hun, 186; *Hart* v. *H. R. Bridge Co.*, 80 N. Y. 622.)

*Hamilton Harris* for respondent.   The plaintiff did not act with proper care in making the attempt to couple the cars with a straight link after he had seen, before he went in between the cars, that one bumper was lower than the other, and required a crooked link to make the coupling.  (*Gibson* v. *Erie R. R. Co.*, 63 N. Y. 449 ; *De Forrest* v. *Jewett*, 88 id. 264; *Powers* v. *N. Y., L. E. & W. R. R. Co.*, 98 id. 274; *N. Y., L. E. & W. R. R. Co.* v. *Lyons*, 119 Penn. St. 324; *Marsh* v. *Chickering*, 101 N. Y. 396 ; *Shaw* v. *Sheldon*, 103 id. 667 ; *Cahill* v. *Hilton*, 106 id. 512; *Appel* v. *B., N. Y. & P. R. R. Co.*, 111 id. 550.)   Under the circumstances, there was no omission of any duty which the defendant owed to the plaintiff in the exercise of reasonable care in providing fit appliances for the plaintiff.  (*DeGraff* v. *N. Y. C. & H. R. R. R. Co.*, 76 N. Y. 125 ; *Kelly* v. *N. Y. & S. B. R. R. Co.*, 109 id. 44; *Devlin* v. *Smith*, 89 id. 470 ; *Arnold* v. *D. & H. C. Co.*, 6 N. Y. S. R. 368 ; *Bailey* v. *R., W. & O. R. R. Co.*, 49 Hun, 377.)

BROWN, J.   It was decided in *Gottlieb* v. *New York, Lake Erie & Western Railroad Company* (100 N. Y. 462), that a railroad company is bound to inspect the cars of

another company used upon its road, just as it would inspect its own cars. That it owes this duty as master, and is responsible for the consequences of such defects as would be disclosed or discovered by ordinary inspection. That when cars come to it from another road which have defects, visible or discernible by ordinary examination, it must either remedy such defects or refuse to take them. This duty of examining foreign cars must obviously be performed before such cars are placed in trains upon the defendant's road or furnished to its employes for transportation. When so furnished the employes whose duty it is to manage the trains have a right to assume that, so far as ordinary care can accomplish it, the cars are equipped with safe and suitable appliances for the discharge of their duty, and that they are not to be exposed to risk or danger through the negligence of their employer. The defect complained of in this case was obvious and discernible to the most ordinary inspection and could have been easily remedied. It is argued by the defendant that it had fulfilled its duty when it had furnished for the use of its employes crooked links which could be used in coupling together cars upon which the bumpers were of different heights. We do not think that in this case that fulfilled the measure of defendant's obligation. It could not be so held unless it was the duty of the plaintiff to examine and inspect the cars to ascertain whether the coupling appliances were in proper condition. The duty of examination, like the duty of furnishing proper machinery and appliances in the first instance, rests upon the master. (*Fuller* v. *Jewett,* 80 N.Y. 46 ; *Gottlieb* v. *N. Y., L. E. & W. R. R. Co., supra.*)

And the degree of vigilance required from a railroad corporation in this respect is measured by the danger to be apprehended and avoided.. (*Ellis* v. *N. Y., L. E. & W. R. R. Co.,* 95 N. Y. 546 ; *Salters* v. *D. & H. C. Co.,* 3 Hun, 338.) While in the case of corporations the performance of this duty must be committed to employes, there is no presumption that it rests upon any particular individual. It is not within the apparent scope of a brakeman's duty and does

not necessarily rest upon him.  In the absence of all evidence upon the subject, we cannot, therefore, presume that the examination and inspection of the particular cars in question had been committed to the plaintiff, and unless it had he had a right to assume that the master's duty had been performed by those having it in charge, and that the coupling appliances upon the cars were adequate to the performance of his work without extraordinary risk or danger.

It is further contended by defendant that the accident was one of the ordinary risks of plaintiff's employment and was liable to happen in coupling any cars.  Some evidence to which our attention is called, given by plaintiff on his cross-examination, standing alone would give some color to this claim, but, read in connection with the other testimony, shows that it is only when the cars are propelled against each other with great force that the dead-woods are liable to come together and thus endanger the brakeman making the coupling.

The evidence is that when the moving cars are backed upon the stationary car at a slow rate of speed, or at a speed ordinarily used in making couplings, that the bumpers or draw-heads will take the whole shock and the dead-woods will not meet, but there will be a space between them of from two to eight inches.  Doubtless the danger of injury arising from the engineer's backing the train upon the stationary car with great force is a risk which the brakemen must assume, and for which the corporation would not be responsible, but that was not the risk to which the plaintiff was exposed.

The evidence is that the train was backing up slowly and at a rate of speed that would not have brought the dead-woods in contact if the bumper had been in order.  Because the bumper of the moving car was defective and hung lower than it should have done, it passed under the bumper of the station-ary car and permitted the dead-woods to come together.

The defective bumper was thus shown to have been the proximate cause of the accident.  It was literally the *causa causans*.  Its immediate effect was to permit the dead-woods of the two cars to come together, and the plaintiff was, from

that cause, exposed to a danger not within the ordinary risks of his employment.

This result was traceable directly to the defendant's failure to provide the moving car with bumpers in good order, and unless the proof showed (which it did not) that plaintiff himself was in some way responsible for that condition of the car, the negligence of the defendant was established.

The question as to the plaintiff's contributory negligence was, I think, one of fact for the jury. He testified that when the cars were four or five feet apart he saw that the bumper of the moving car was lower than the bumper of the stationary car. It does not appear that he observed that it would pass under the bumper of the stationary car, or that there was any danger that the dead-woods would come together. On the contrary, he appears to have thought that the coupling could be made with the straight link that was in the draw-head. He had a right to assume that fact, and that the coupling appliances were in good order. It was only at the moment that the cars were about to collide that he discovered his error.

The court cannot affirm that for such an error of judgment, induced as it was to some extent by defendant's neglect, he is to be held to have been careless. Under such circumstances, when the whole transaction is the occurrence of a moment, a man is not to be held responsible if he errs as to the estimate of the danger that confronts him. If he acts the part of a prudent man, willing to and intending to perform the duty to which he has been assigned, he has done all that the law demands of him, and whether he acted such a part, under the circumstances of this case, was for the jury to determine.

The judgment of the General Term should be reversed and a new trial granted, with costs to abide event.

All concur, except FOLLETT, Ch. J., and POTTER, J., dissenting, and HAIGHT, J., not voting.

Judgment reversed.