WILLIAM BENNETT, Appellant, *v.* THE GREENWICH AND JOHNSON-
VILLE RAILWAY COMPANY, Respondent.

*Failure of a railroad company to furnish an inspector, and a crooked link for
coupling cars — negligence predicated thereon — its duty as to cars received by it —
damages for personal injuries.*

Upon the trial of an action brought to recover damages arising from personal
injuries resulting from the defendant's alleged negligence, the failure of a rail-
road company to provide an inspector for its cars, or to furnish a crooked link
suitable for the coupling of cars of different heights, raises a question for the
determination of the jury as to whether or not the defendant had furnished for
the use of its injured employee reasonably safe tools and implements for the
performance of his work.

A railroad company in receiving cars upon its road is bound to use reasonable
care in the inspection of the same, and in adapting them to the use of its
employees, so as not to subject its employees to undue hazard in their use.

APPEAL by the plaintiff, William Bennett, from a judgment of
the Supreme Court in favor of the defendant, entered in the office
of the clerk of the county of Washington on the 15th day of May,
1894, upon the dismissal of the complaint directed by the court after
a trial before the court and a jury at the Washington Circuit.

*Frank B. Hull* and *T. F. Hamilton,* for the appellant.

*C. C. Van Kirk,* for the respondent.

MAYHAM, P. J.:

The plaintiff was injured while attempting to couple cars on the
defendant's railroad.

The proof shows that the cars, in attempting to couple which he
was injured, were cars from other railroads than that of the defend-
ant. That there was a difference in the height of the drawheads
in which the coupling link was to be inserted, of about four inches.
That the plaintiff was ordered by the conductor of the train to
couple the cars, and when the cars were within four feet of each
other, one moving slowly and the other stationary, the plaintiff dis-
covered the difference in the height of the drawheads, and that there
was no crooked link provided for such conditions; that the link was
in the lower drawhead, and at about the time of the discovery of

the difference in the height of the bumpers the conductor directed him to change the link from the lower to the higher drawhead, but he was unable to do so by reason of the proximity of the cars to each other; that in his attempt either to couple the cars in the condition in which they were, or to change the link from the lower to the upper drawhead, the plaintiff's arm caught between the bumpers, and was so injured as to necessitate amputation.

The evidence discloses that the defendant kept no car inspector, and had no printed, written or other rules for the government of its employees, or the management or equipment of its cars.

The proof showed that it was customary for railroads to furnish crooked links with which to couple cars of different height.

There was also evidence tending to show that a crooked link was safe, and in many cases necessary, in coupling cars of different height of drawheads. The evidence also tended to show that other railroad companies generally, if not universally, provided inspectors for cars, and rules for the government of their trains.

To meet that contention it was shown by the defendant that its railroad was but a single track extending but a few miles, with few cars and small capital, and that the strictness of management and completeness of equipment was not required of it that would be exacted of more important and extensive railroad systems.

At the conclusion of the evidence the judge nonsuited the plaintiff, mainly, as it appears, upon the ground that the defendant had not been proved to have been guilty of negligence which caused the injury. The plaintiff was not chargeable with contributory negligence, but the accident was the result of the dangerous character of the plaintiff's employment, the risk of which was incident to the employment, and was assumed by him.

It is conceded by the learned trial judge that he did not place the nonsuit on the ground of the plaintiff's contributory negligence. In *Goodrich* v. *N. Y. C. & H. R. R. R. Co.* (116 N. Y. 404) it was held that when the defendant failed to show that it provided a car with bumpers in good order, and the injury was traceable to defective bumpers, it was liable unless the proof showed that the plaintiff was in some way responsible for that condition.

It is not pretended in the case at bar that the plaintiff had anything to do with the difference in height of these bumpers, or with

the furnishing of the straight links. We are inclined to think that failure to provide an inspector for its cars, or to furnish a crooked link suitable to the coupling of this class of cars, raised a question of fact for the jury to say whether or not the defendant had furnished for the use of the plaintiff reasonably safe tools and implements for the performance of his work, and that it was error to hold as matter of law that the defendant had performed its whole duty to the plaintiff in requiring him to couple cars in the condition in which these were proved to have been.

The defendant in receiving these cars on to its road was bound to use reasonable care in the inspection of the same and in adapting them to the use of its employees, so as not to subject such employees to undue hazard in their use. (*Gottlieb* v. *N. Y., Lake Erie & W. R. R. Co.*, 100 N. Y. 462.)

Without stopping to examine the question of the increased obligation resting upon the defendant, growing out of the alleged incapacity of the plaintiff, we think there was enough in the case, independently of that question, to have required its submission to the jury and that it was error to take it from the jury.

The judgment must be reversed and a new trial ordered, costs to abide the event.

PUTNAM and HERRICK, JJ., concurred.

Judgment reversed and a new trial granted, costs to abide the event.