JOHN ALBERT, Respondent, *v*. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Duty of a railroad company to its employees — neglect thereof does not warrant an employee in rushing into a dangerous position — vigilance required of an employee working among railroad cars.*

A person who enters the employment of a railroad company and continues in such employment, rendering services therein without objection or complaint, assumes the ordinary risks incident to the service, but the company cannot rely upon such assumption of risks on the part of the employee, unless it takes reasonable precautions to insure his safety while in the performance of his duty.

It is a duty which a railroad company owes to its employees, to inspect the cars and ascertain their fitness for service, and its duty in such respect is measured by the danger to be apprehended and avoided. Such an employee owes a duty of care and prudence to himself and to his employer, which is also to be measured by the dangers of the place where he is at work and the risks to be encountered.

The fact that the company is neglectful of its duty does not warrant the employee in rushing into a palpably dangerous position.

Working with and among the cars of a steam railroad is necessarily a dangerous employment and demands on the part of an employee thus engaged active vigilance to avoid danger to the same degree at least as is demanded of a traveler along a highway approaching a railroad crossing.

When the failure to see that a car is defective constitutes contributory negligence.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 21st day of December, 1893, upon the verdict of a jury rendered after a trial at the Albany Circuit, with notice of an intention to bring up for review on such appeal the

said judgment and an order entered in said clerk's office on the 21st day of December, 1893, denying the defendant's motion for a new trial made upon the minutes.

*Hamilton Harris*, for the appellant.

*J. Newton Fiero*, for the respondent.

HERRICK, J.:

This is an appeal by the defendant from a judgment entered upon the verdict of a jury in favor of the plaintiff and against the defendant for the sum of $5,386.74, damages and costs.

The action is on account of injuries received by the plaintiff in attempting to couple cars in the freight yard of the defendant at Weehawken on the 27th day of January, 1892.

The plaintiff was employed by the defendant as a brakeman, and he had been so employed for about a month, working the most of the time in the freight yard at Weehawken, making and breaking up trains and placing cars; in performing such services it was his duty to couple and uncouple cars.

At the time of receiving the injury a car that had arrived in the freight yard had just been weighed and moved from the scales, and stood motionless upon the track. This car was what is known as a crippled car; at one end of the car the extension block, bumpers and drawhead were all gone; there was no link nor link pin; there was a log chain attached to what is called the king bolt, under the car, which came to the end of the car, dropping down therefrom and dragging on the ground about eighteen inches, which chain was used to couple the car with other cars in place of the coupling link.

The absence of the extension block, bumpers and drawhead from this car permitted the drawhead of a sound car, coming in contact with the crippled car, to pass underneath it, so that there would be only a space of about four inches between them; the drawhead is the iron projection at the end of the car into which the coupling link is inserted.

It is customary upon the arrival of cars at the freight yard to inspect them, and to mark with chalk any that are found crippled, or in any respect defective.

There is a controversy in this case as to whether the car in question was so marked; the plaintiff claims that he looked, and did not see any marks; the defendant's witnesses say that the car was plainly marked on both sides.

While it seems to me that the evidence that the car was marked largely preponderates, still it must be assumed for the purposes of this discussion that the jury found that there were no marks on the car indicating that it was crippled or defective.

While this crippled car was standing upon the track another one had been weighed and moved from the scales, and the plaintiff proceeded to couple it to the crippled car; his testimony is that he walked in front of the sound and moving car toward the crippled car; that he went in between them when they were eight feet apart, and upon their coming together his arm was caught between them and badly crushed.

The exact manner in which the accident happened does not clearly appear; the plaintiff testifies that at the point where they came together there was a curve in the track bringing the sides of the cars on the inside of the curve close together, the distance between them widening towards the outer side of the curve, and that in attempting to get from between the cars, he had his arm in advance of his body towards the inner side of the curve, and that it was caught between the outer edge of the cars and crushed, while his body was only slightly pressed, not seriously injured, by reason of the greater distance between the cars where his body was.

The defendant's witnesses, on the contrary, say that the track at that point was perfectly straight, and that at the time of the happening of the accident the body of the plaintiff was not between the cars; that only his arm extended between them when it was caught. The accident happened about three o'clock in the afternoon of a clear day.

The plaintiff's claim is, that he was not employed for the purpose of handling crippled cars except when they were marked crippled and the claim here is that defendant is liable for the accident by reason of permitting this crippled car to remain in the yard in its crippled condition without being marked or designated so as to notify the plaintiff that it was a defective car.

The plaintiff, in entering the defendant's employ, assumed the

ordinary risks incident to the service, and in continuing in its employ in the Weehawken yard, and rendering the services heretofore enumerated, without objection or complaint, he assumed the ordinary risks of such service there.

But the defendant cannot rely upon such assumption of risks on his part, unless it takes reasonable precautions to insure his safety while in the performance of his duty. (*Crown* v. *Orr*, 140 N. Y. 450; *Ford* v. *L. S. & M. S. R. R. Co.*, 124 id. 493–498.)

Among the reasonable precautions that it was the duty of the defendant to take to insure its employees' safety, was the inspection of cars to ascertain their fitness for service. (*Gottlieb* v. *N. Y., L. E. & W. R. R. Co.*, 100 N. Y. 462; *Goodrich* v. *N. Y. C. & H. R. R. R. Co.*, 116 id. 398.)

And within the principle of the last-cited cases it will be assumed that the defendant was negligent in this case in leaving the car on the track in its crippled condition without being marked by it as a crippled or defective car. But while the defendant owed to the plaintiff the duty of supplying him a reasonably safe place in which to work, and as a part of that duty the inspection and marking of its defective cars, its duty in that respect being measured by the danger to be apprehended and avoided, the plaintiff in turn owed a duty to himself and to the defendant, which was also to be measured by the dangers of the place where he was at work and the risks to be encountered. (*Goodrich* v. *N. Y. C. & H. R. R. R. Co.*, 116 N. Y. 398–402.)

The complaint of the plaintiff is, that he was not notified of the dangerous condition of the car, by reason of its not being marked; that no notice was given by the defendant of the danger to which he was exposing himself by endeavoring to couple these cars.

It needs no argument to show that if the plaintiff had actual notice of the dangerous condition of the car in question, and the risk to which he was exposing himself, and then went on voluntarily and encountered the danger, he would have no cause of action against the defendant for the resulting injury; the fact that the defendant had neglected its duty would not warrant him in rushing into a palpably dangerous position.

It has been held in the case of travelers along a highway approaching a railroad crossing that it is their duty to look and listen — to look

both ways for approaching danger; that if they fail to look it is negligence on their part, and that if by looking they could see the approaching danger in time to avoid it, and still go on, they are negligent, either in not having looked, for in looking they must have seen the danger, or, having looked, in still going on; that the duty they owe to themselves and to the railroad company, in such a case, in approaching points of danger, is one of active vigilance. (*Bomboy* v. *N. Y. C. & H. R. R. R. Co.*, 47 Hun, 429; *Woodard* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 369; *Tucker* v. *N. Y. C. & H. R. R. R. Co.*, 124 id. 308; *Daniels* v. *S. I. R. T. Co.*, 125 id. 407.)

It seems to me that the duty of an employee [working with and among cars being necessarily a dangerous employment] demands on his part active vigilance to avoid danger to at least the same degree that is demanded of the traveler along the highway approaching railway crossings.

In this place where the plaintiff was employed there were crippled and uncrippled cars; it was his duty to look, and if he did look and saw the dangerous condition of the car, and did not attempt to avoid the consequences of handling it in such condition, he was negligent; and if he did not look, and thereby failed to see its condition, which he might have seen by looking, it seems to me he was equally negligent.

The crippled car was motionless; its condition was apparent; it was broad daylight; he was approaching it, with his face towards that portion of it that was crippled, and, it seems to me, that if he had looked there was no possibility of his not seeing its condition; and if he did not look, he failed in taking the ordinary precaution that a man engaged in such employment should take. If the car was so crippled that he saw its condition, or could have seen it by looking, he was guilty of contributory negligence in going into and continuing in a dangerous position after he saw its condition, or going into and continuing in such a position without having looked, when by looking he could have seen its condition and avoided the danger. · He had only to look and refrain from going in between the cars, or, being in, to step out from between them and be safe.

In *Millott* v. *N. Y. & N. E. R. R. Co.* (46 N. Y. St. Repr. 145; affd., 139 N. Y. 643) the defect in the car which caused the acci-

dent was not apparent; here, as we have seen, it was perfectly apparent.

In *Mahoney* v. *N. Y. C. & H. R. R. R. Co.* (39 N. Y. St. Repr. 911; affd., 131 N. Y. 623) the bumper was absent upon only one side of the car; the accident happened about midnight, and there is nothing in the case to indicate whether plaintiff could see the condition of the car or not. Here, as before stated, the accident occurred in broad daylight, and the defect was one that was perfectly visible to any one looking; it seems to me, therefore, that the plaintiff has failed to prove the absence of contributory negligence upon his part, and for that reason the judgment should be reversed and a new trial granted, costs to abide the event.

MAYHAM, P. J., and PUTNAM, J., concurred.

Judgment reversed and new trial granted, costs to abide the event.