### GRAVES v. BREWER et al.

(Supreme Court, Appellate Division, Third Department. April 14, 1896.)

MASTER AND SERVANT—DEFECTIVE MACHINERY—ASSUMED RISK.

An employé whose hand was injured between two cogwheels, while cleaning a machine in motion,—it being out of repair and not readily stopped,—cannot recover for the injury, where it appears that he was familiar with the machine, and the danger was as apparent to him as to the master, although he was directed to do the work while the machine was in motion, and was assured that it was all right to do so.

Appeal from trial term, Cortland county.

Action by John Graves against Edward H. Brewer and another. Judgment for defendants. From the judgment and an order refusing a new trial on the minutes, plaintiff appeals. Affirmed.

Argued before LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

William Kennedy and W. C. Crombie, for appellant.
Kellogg & Van Hoesen, for respondents.

MERWIN, J. On the 7th or 8th December, 1892, the plaintiff entered into the employ of the defendants as an operator of an upsetting machine in defendants' shop. He continued in their employ to the 28th January, 1893, when he received an injury to his hand by its coming in contact with uncovered, moving cogwheels on the side of the machine. In this action the plaintiff claims to recover damages for this injury on the ground that it was caused by the negligence of the defendants. The machine at which plaintiff worked was an iron machine standing about 3 feet high from the floor. It was 4 or 5 feet long, and at the east end, where plaintiff stood while engaged in running it, it was about $2\frac{1}{2}$ feet wide, and at the west end it was less than 2 feet wide. On the south side, at the west end, there were 2 cogwheels that meshed together,—one about 2 feet across, and the other about 6 inches. Power was received from overhead shafting, by means of a belt running down, and attached to a pulley on the north side of the table. This pulley was on a shaft that ran across the table to the small cogwheel. The large cogwheel was on a shaft that ran across the table, and was connected with the upsetting apparatus. The cogwheels, in motion, ran away from each other, on the top. On the top of each shaft, an inch or two from the wheel, there was an oil cup. The plaintiff was then about 24 years of age, and, before this employment, knew, in a general way, how machinery was run by wheels and cogs that work into each other. When he went to work for defendants, he was told how to operate the machine. It was started and stopped by a lever on the north side, and the use of this was also explained. The plaintiff went to work, and had no difficulty in running the machine. On the first Saturday after he commenced, the superintendent, Mr. Steele, came to him, stopped the machine, got a handful of waste supplied for that purpose, and told the plaintiff to take it and wipe all the grease and dirt off of the top of the machine, and clean out the oil cups; and he showed the plaintiff how to do it. The superintendent then told the plaintiff to stop the machine every Saturday night in time to wipe it up and get through before 5 o'clock. This the plaintiff did for several weeks. About the 20th of January, following, there was some breakage in the machine; and thereafter, for the purpose, apparently, of preventing the machine getting out of gear while in operation, the lever was tied to the side of the machine, and the plaintiff was told not to untie it, as it would have to be fixed. On the following Saturday

night the plaintiff got ready to clean the machine, and then, as he testifies:

"I went over and asked Mr. Steele how I was going to clean it. He was measuring some joints. He said: 'Go on and wipe it. It is all right.' I asked him if I could wipe it when running. He said: 'Yes, go on and wipe it.' And I went on and wiped it. I wiped it with waste, just as I had done before, except that the machine was running, instead of being stopped."

He wiped it then, as he testifies, without any trouble or difficulty. After this he continued at work at the machine in the same shop until the next or the second Saturday following,—he is not certain which. Then, without anything further being said between him and the defendants, or their superintendent, he proceeded to clean the machine while in motion, as he had formerly done; and, while cleaning out the oil cup near the small wheel, his hand was in some way caught and drawn into the wheels, and injured. He was then standing on the south side of the machine, near the west end, and was reaching over one side of the small wheel.

At the close of the evidence on the part of the plaintiff the defendants moved for a nonsuit upon the grounds, among others, that the plaintiff was guilty of contributory negligence; that the danger was obvious and apparent, and the plaintiff assumed the risk. The motion was granted, it being said by the court that it was granted "on the ground that it appears from the evidence that the defects complained of were obvious and apparent,—as much so to the plaintiff as they were to the defendants or their superintendent,—and that for that reason the plaintiff cannot recover for damages arising from those defects." The claim of plaintiff is that the question of plaintiff's contributory negligence, and the assumption of the risk, should have been submitted to the jury.

The case of Knisley v. Pratt, 75 Hun, 323, 26 N. Y. Supp. 1010, involved the consideration of an accident quite similar to the one here. There an employé was injured in cleaning a machine in motion, and her hand was caught between unguarded cogwheels. At the circuit a nonsuit was granted on the ground that the plaintiff assumed the risk. The general term reversed the judgment on the ground that the question of contributory negligence was for the jury, and that the rule as to the assumption of risks from unguarded cogs was changed by reason of the statute (factory act; chapter 409 of the Laws of 1886, and subsequent amendments) that required employers to furnish special protection to such kind of machinery. This decision is largely relied on in the argument on the part of the plaintiff. It has, however, been recently reversed in the court of appeals, and the nonsuit affirmed. 148 N. Y. 372, 42 N. E. 986. That case now stands as authority, I think, for the nonsuit in the present case, unless the plaintiff here has a better position by reason of the direction and assurance of safety given the week before by the defendants' superintendent. The danger was as apparent to the plaintiff as to the defendants. He testifies that he understood the full operation and management of the machine, as far as his work went; that he "knew the whole situation and location there,"—referring to the

situation and location of the wheels on the south side of the machine. He asked for no further instructions. In such a case he took the risk, although there was a direction to do the act. Crown v. Orr, 140 N. Y. 450, 455, 35 N. E. 648. In Daley v. Schaaf, 28 Hun, 315, the master had better means of knowledge of the danger than the servant had; and so it was in Kain v. Smith, 89 N. Y. 385. In Haas v. Balch, 6 C. C. A. 201, 56 Fed. 984, 987, it is said:

"If, in a given instance, the servant, being of mature age and of ordinary intelligence, has equal knowledge with the master of the dangers to be apprehended, and he voluntarily subjects himself thereto, knowing of their existence, the mere fact that he had received an assurance that there was no risk to be dreaded or avoided might be of little avail in relieving him from the charge of contributory negligence."

Under the circumstances shown in the present case, it was, in effect, held by the trial court that the plaintiff, in continuing his work, and undertaking, upon the day in question, without further objection or instructions, to perform the hazardous work, assumed the obvious risk. No good reason is, I think, apparent for disturbing that conclusion.

Judgment and order affirmed, with costs. All concur.