JOHN N. RENNINGER, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Negligence — a brakeman injured while coupling a car — a coupling pin jammed fast — a risk of the employment — contributory negligence — neglect to use a "coupling stick."*

Where a brakeman who is engaged in coupling a car to an engine fails to inspect the drawhead of the car until just as the engine is backing down upon him in response to his signal, and then discovers a pin in the drawhead of the car, which is an obstacle to such coupling, and failing in his attempt to remove the pin steps back to get out and is caught between the car and engine and injured, such brakeman must be deemed to have voluntarily placed himself in a place of danger without having used the caution which a person of reasonable prudence should have exercised, and cannot recover damages for the injury thus sustained.

Such an accident is one of the ordinary risks incident to the business, which he must be deemed to have assumed.

The injury in such a case, so far as it resulted from the pin being fastened in the drawhead of the car, was not the result of a defective appliance or instrument, but was rather attributable to the improper selection and use of the pin and link employed.  Per ADAMS, J.

WARD, J., dissented.

The effect, under the circumstances of this case, of a "coupling stick" having been furnished to the brakeman, and of his having executed to the railroad a release from all liability for any injury happening by reason of his not using it, considered by ADAMS and WARD, JJ.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 18th day of May, 1896, upon the verdict of a jury for $3,000 rendered after a trial at a Trial Term of the Supreme Court held in and for the county of Erie, and also from an order entered in said clerk's office on the 18th day of May, 1896,

denying the defendant's motion for a new trial made upon a case containing exceptions.

The action was brought to recover because of the alleged negligence of the defendant. The injuries were received by the plaintiff on the 22d of November, 1894, while coupling cars at Corfu, on the defendant's road. Plaintiff sought to couple a car standing on a branch track to an engine, and in doing so the plaintiff "rode the car out until she got to the crossing." He then gave the engineer a signal to stop, and he swung up, and the stake which had been used to move the dead car fell down, and then the engineer backed up, and when he backed up the plaintiff "went in between the car and engine and found there was a link and pin there, and got hold of the pin in the head end of the car, next the engine; there was a link and pin in the engine also." The plaintiff had been in the employ of the defendant as brakeman nearly five years, and he testified he was "familiar with disconnecting cars," and that he was familiar with the manner in which pins were used. The plaintiff testified that he went to the engineer, signaled him to back up, and that he got off the car after he had got the same on the main track, and he gave the engineer a signal to back up; "the engine was about a half a car length away; after signaling him to back up, I got in and got hold of the pin and link, and after I discovered the pin was fast and I couldn't pull it, and I dropped the link and tried to get out, and before I could get out I was caught. I took hold of the pin with the left hand and the link with the right hand; I was on the south side of the car, the engineer's side. I discovered it was driven in with another pin and link on the top; it was pounded. I shook it, shook the link and tried to pull it out and couldn't." When he discovered that it was fast he started to back out and stepped back to get out; "the engine caught the sill of the car and drove me against the sill of the car."

The witness testified, in answer to the question, "Was it necessary to draw that pin in order to make the coupling? A. Yes, sir. Because you couldn't make the coupling if you did not raise the pin. If I could have raised the pin, I could have entered the other link in the drawhead. It was in the way; you cannot connect the car with two links in each end of the car." The witness says that when he found there was a link in the engine and one in

the car, he undertook to take the one out of the car so that he could couple the engine on to the car, and that he made the discovery and got injured, and that he started to get out when he discovered that the pin was fastened. "I couldn't pull it; I didn't believe it could be driven out, it was pounded so tight in on the top; you could see where it was pounded, and I let go and tried to get out."

In the course of the plaintiff's cross-examination he said: "After I gave the signal to back up, I got down and got hold of the pin with my left hand and got hold of the link with my right, and I found the pin was fast; I shook the link up and down; after I found she was fastened, I tried to get it out, but I hadn't sufficient time to get it out before I was caught; I got in to pull that link out."

The plaintiff testified that in the ordinary coupling and uncoupling of cars there is difficulty in removing the pin. He adds, however, "they are supposed to pull easy." He further testified that this particular pin "was driven in there; it was too large for the hole of the drawhead."

*James Fraser Gluck,* for the appellant.

*George W. Cothran,* for the respondent.

HARDIN, P. J.:

At the close of the plaintiff's evidence the defendant moved for a nonsuit on several grounds, among them on the ground that if by the plaintiff's testimony it appears that he himself had ample opportunity to observe the defect, if a defect had existed, in any appliances furnished;" and, *secondly,* that it appeared that the injuries were received by reason of a risk which the plaintiff assumed; and on the further ground that no negligence was shown sufficient to charge the defendant. The motion for a nonsuit was denied and an exception was taken. At the close of the whole evidence the defendant moved for a direction of a verdict in its behalf. The motion was denied and an exception was taken.

Before the plaintiff stepped in between the car and the engine he had ample opportunity to inspect the pin and link in the car he was about to attach to the engine. He could have approached the car

and made an examination of the pin and link and discovered whether it was readily removed when .applying such force as his hand would bestow upon the pin. He made no such effort. On the contrary, he allowed the opportunity to pass by, and signaled the engineer to approach and placed himself voluntarily in the place where he received the injuries. As he said, and as the evidence discloses, and as common observation indicates, there is more or less difficulty in removing pins from drawheads caused by the ordinary incidents attending their use. It seems the plaintiff voluntarily ventured to place himself in a point of danger without having used the caution which a person of ordinary care and prudence should have exercised. It is now well settled that an employee takes the ordinary risks incident to the business in which he is employed. (*Kaare* v. *T. S. & I. Co.*, 139 N. Y. 369; *Flood* v. *W. U. Tel. Co.*, 131 id. 603; *Albert* v. *N. Y. C. & H. R. R. R. Co.*, 80 Hun, 152; *Knisley* v. *Pratt*, 148 N. Y. 372; *Graves* v. *Brewer*, 4 App. Div. 330.)

In *France* v. *R., W. & O. R. R. Co.* (88 Hun, 318) it was said : " As a rule a servant entering into an employment which is hazardous assumes the usual risks and perils of the service — those which are apparent to ordinary observation or which he must know if he exercises ordinary care and observation ; and when he accepts or continues in the service with knowledge of the structures or implements used from which injury may be apprehended he assumes the hazards incident to the situation."

In *Crown* v. *Orr* (140 N. Y. 452) O'BRIEN, J., alludes to the rule and states that if the servant voluntarily enters into, or continues in the service, without objection or complaint, having knowledge " or the means of knowing the dangers involved, he is deemed to assume the risk and to waive any claim for damages against the master in case of personal injury to him. * * * He is bound to take notice of the ordinary operation of familiar laws and to govern himself accordingly, and if he fails to do so the risk is his own. He is bound to use his eyes to see that which is open and apparent to any person so using them, and if he neglects to do so he cannot charge the consequences upon the master."

The trial judge charged the jury, " that one of the dangers to be apprehended by the brakemen in the ordinary operation of the road

was the misfit of links and pins, and the possibility that in coupling, or attempting to couple, they might not successfully do so." And he further charged, " That this being so, being one of the dangers to be apprehended, it was one of the risks incident to the business which the plaintiff assumed." When the court had given the instructions just quoted to the jury, the counsel for the defendant asked the court to direct a verdict for the defendant. The court thereupon declined and an exception was taken. Then the defendant excepted to that part of the charge of the court which submitted the question to the jury " whether the plaintiff exercised ordinary prudence in giving the signal for the engine to start before endeavoring to ascertain the condition of the coupling."

The counsel for the defendant then asked the court to charge the jury " that the possibility of not making a successful coupling being one of the risks of the employment, the plaintiff was bound to examine such instruments before attempting to place himself in a position of danger."

The court declined so to instruct the jury, and the defendant took an exception. Then the counsel for the defendant took an exception to that part of the charge of the court " that plaintiff has a right to assume that the link and pin were in order, and that he might operate them as they were ordinarily used."

The court modified its charge by saying to the jury, " You may be able to say from the testimony that he had a right so to assume," and to that an exception was taken by the defendant.

The evidence fails to show that the plaintiff exercised that care and caution that a person of reasonable prudence, under the circumstances, should have exercised. The verdict in that regard is not satisfactory.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

FOLLETT, ADAMS and GREEN, JJ., concurred; WARD, J., dissented.

ADAMS, J.:

I vote for reversal for the reasons stated in the foregoing opinion of HARDIN, P. J., and for the further reason that the injury of which the plaintiff complains was not caused by a defective appliance or instrument, but was, rather, attributable to the improper

selection and use of the link and pin employed for the purpose of making the coupling in question.

The selection and use of such appliances were, in my opinion, mere details of the business in which the plaintiff was engaged, which, of necessity, must be left to the care and judgment of a brakeman. And for the omission of proper care on his part in making such selection, or in using the same when selected, the defendant cannot be held liable.

WARD, J. (dissenting):

This is an action for personal injuries alleged to have been sustained by the plaintiff while in the employ of the defendant as a brakeman, while he was attempting to couple cars upon the defendant's road. The defendant's answer is a general denial with a special defense that the plaintiff's injuries were caused solely by his negligence in disregarding a rule of defendant as to the use of a coupling stick in coupling cars, and a release, upon consideration, of defendant's liability from injuries to the plaintiff while coupling cars. The action was brought in the Superior Court of Buffalo, tried in November, 1895, where the plaintiff recovered a verdict of $3,000. Upon the merger of the Superior Court into this court in 1896, a motion for a new trial was made upon a case and exceptions by the defendant, which was denied, and the appeal herein is taken from the judgments rendered in the action and from the order denying the motion for a new trial. The plaintiff was injured November 22, 1894. He had been in the employment of the defendant as a brakeman for about a month. He had been a brakeman upon other roads for several years. When he entered the defendant's employment there was presented to him for his signature, which he signed, a paper of which the following is a copy:

"I am of lawful age, and hereby acknowledge the receipt of a coupling stick and the notice regarding the use of the same from which this receipt is to be detached, and I acknowledge that the provisions of said notice are fully understood by me, and I expressly release the N. Y. C. & H. R. R. R. Co. from all liability to me or my representatives for any injury happening to me *from not using a coupling stick.*"

It was claimed by the defendant, and a witness testified, that at

the time of the execution of the said paper, there was a notice appended to the back thereof as follows :

### "COUPLING STICK NOTICE AND RECEIPT.

"(NOTE.— These notices and receipts can be obtained on regular requisition, and must be kept on hand by all those having under them employees whose duties require them to couple freight cars. At the time of signing the receipt, the coupling stick must be delivered to the employee in the presence of the person witnessing the signing of the receipt. The receipt when signed should be sent at once to the division superintendent for safe keeping.)

### "NOTICE.

"In consequence of frequent injuries received by men engaged in coupling freight cars, by thoughtlessly stepping too far in between them or remaining too long between them, coupling sticks are provided to prevent injury by their use. The company requires every employee making couplings to use one of these sticks, and every employee injured in coupling *when not using a stick* will be deemed voluntarily to have taken all the risk of such injury."

The notice further provided that whenever the stick delivered at the time of signing was lost or broken it was the duty of every employee who made couplings to apply for another at once.

The plaintiff went to work upon a local way freight of defendant which ran between Buffalo and Rochester. On a trip taken by this freight train from Rochester to Buffalo on the 16th of November, 1894, there was upon this train a gondola coal car that belonged to the Pennsylvania railroad, and is known in the case as a "foreign car." This car was left upon the siding at Corfu, a small station on defendant's road. On the twenty-second of November this train on its way from Buffalo to Rochester stopped at Corfu and the conductor ordered the plaintiff, who was the rear brakeman on the train, to go forward and stake out this car from the siding and to make it a part of the train. The plaintiff obeyed these directions and informed the engineer of the train what they were. The engineer disconnected the engine from the train and ran ahead to the siding. The plaintiff opened the switch connecting the siding with the main track, and then went to the engine and took a stake therefrom and placed one end of it against the engine tender and the other against the end of the car on the siding, and then got upon the car; the

engineer moved his engine back, which forced the car out on to the main track ; the engine stopped and the stick fell to the ground. The plaintiff signaled the engineer to back up so that he could couple the car to the tender of the engine. As the engine approached, the plaintiff attempted to make the connection, and he then discovered that there was a link and pin in the end of the car nearest to the engine and also a link and pin in the tender of the engine. One of these links and pins had to be removed before the coupling could be made. The plaintiff stepped in at the end of the car which was nearest to him and took hold of the link and pin with his right hand and the drawhead with his left hand to remove the pin. The plaintiff's testimony tended to show that then for the first time he discovered that the pin had been driven in so that it could not be removed with his hands, though he made considerable effort to remove it, without avail, and seeing the tender close upon him, he sought to get out from between the cars, but was unable to do so, and was crushed between the cars and was severely injured. It was claimed by the plaintiff, and his testimony tended to show, that if he had experienced no difficulty in removing the pin from the link he would have had time to have made a safe coupling and not received any injury. He further testified that, as he understood the rules of the road, when he found the link and pin in each of the two cars he was attempting to couple, one being an engine, it was his duty to remove the link and pin from the end of the car; that another rule or custom of the road was that, when a car was left anywhere along the line, the link and pin in the car that was left on the siding was left in in the rear end. It appeared that the company had no written rules upon the subject. The rule referred to was the custom among the brakemen in operating the train. The plaintiff denied his ever receiving the coupling stick, while admitting the execution of the agreement. He denied all recollection or knowledge of seeing the notice which, as the defendant claimed, was appended to the receipt and given to the plaintiff, while John E. Cary, a witness and an employee of the defendant and whose name is signed to the receipt as a witness, testified that he saw the plaintiff sign the receipt and that he received a copy of the notice. The conductor of the train testified that at the time of the accident he found a large pin in the drawhead which was tight in the link

though not clear down, but the pin was so large that it bound in the drawhead; that he tried with his hand and could not lift it out; that he finally got it out and threw it away, and that he made the coupling by taking the link and pin from the engine and using the link that was in the car. There was no conflict in the evidence except upon the subject of the rules, the delivery of the coupling stick and the service of the notice. The plaintiff testified that he never used the coupling stick to effect a coupling and never saw one used, and the evidence was uncontradicted that a coupling stick would have been of no service in the attempt to remove the pin that was bound in the link connected with the car.

The point most earnestly pressed by the learned counsel for the appellant upon our consideration is that by the receipt and notice above set forth the defendant is discharged from all liability to the plaintiff for his injury, and released from all damages resulting therefrom. He treats these papers not only as a contract, but as a rule of the road of the defendant, which the plaintiff could not violate with impunity, and cites a number of authorities to show that, in case of an absolute agreement that a coupling stick shall be used in all cases of coupling, or a rule to that effect, known to the brakeman, a recovery cannot be had for an injury to a brakeman in attempting the coupling in the usual way by hand, and without a coupling stick.

Without questioning the authority of these cases, it is sufficient to observe that no rule of the defendant of the kind mentioned appears by the records before us, even assuming that the plaintiff received the notice, and that that is to be treated as a rule of the company; that notice, fairly construed, does not forbid the coupling of cars by the usual method of stepping in between the cars as they come together and coupling by hand, but the notice recites that, in consequence of men engaged in coupling freight cars thoughtlessly stepping in *too far between* or *remaining too long between* them, coupling sticks are provided to prevent injury, etc. The notice, therefore, seems to assume that the men will to some extent step in between the cars in their attempt to couple them, and the effect of the two papers (the receipt and notice), taken together and fairly construed, is simply this, that the brakemen releases the company from liability for any injury happening "*from not using a coupling*

*stick.*" This is very far from a rule or contract forbidding a coupling except with a coupling stick. If that were so, what would become of a case like the one we are considering, where the use of a coupling stick would be ineffectual to remove the obstacle to the coupling? The brakeman is ordered to make the coupling. It is his duty to do so; if he cannot make it with a stick he must do it with his hands. The conductor, when he effected the coupling afterwards, did not use a stick, and we must regard the coupling stick as out of the case. Besides, there was a conflict in the evidence as to whether the plaintiff ever received such a stick from the defendant, whose business it was to furnish it. · There was a conflict in the evidence, also, as to whether the plaintiff had any knowledge or notice of the notice claimed to have been delivered to him. The court submitted to the jury the question as to whether the plaintiff received the coupling stick, and as to whether he had any knowledge of the notice, or had received it, and the jury found with the plaintiff. · It is true that the plaintiff was an interested witness. The witness who testified to the delivery of the stick and the service of the notice was an employee of the defendant. The finding of the jury with the plaintiff upon these questions we are not at liberty to disturb. The defendant also claims that the plaintiff, having received the coupling stick, was bound to use it, or, if he never received one, he was bound to procure one under his agreement, as the evidence disclosed that they were kept in the caboose ready for the use of the brakemen. The plaintiff denies that any coupling sticks were kept in the caboose, and the jury have found with him upon that question.

In *Goodrich* v. *N. Y. C. & H. R. R. R. Co.* (116 N. Y. 402), which was a coupling case where the bumpers were of different heights, and it was proved by the defendant that it had provided crooked links for its brakemen to meet such an emergency, Judge. BROWN, speaking for the Court of Appeals, says: "It is argued by the defendant that it had fulfilled its duty when it had furnished for the use of its employees crooked links which could be used in coupling together cars upon which the bumpers were of different heights. We do not think that in this case that fulfilled the measure of defendant's obligation. It could not be so held unless it was the duty of the plaintiff to examine and inspect the cars to ascertain whether the coupling appliances were in proper condition. The

duty of examination, like the duty of furnishing proper machinery and appliances in the first instance, rests upon the master." (Citing cases.)

The defendant also strenuously contends that the proof discloses that the plaintiff was guilty of contributory negligence as a matter of law in going between the cars and attempting to make the coupling with his hands when he must have known that there was a link and pin in the end of each of the approaching cars, and that he should not have permitted the cars to come together, as he controlled their movements, until he had removed one link and pin, and prepared them for proper coupling.

From the opportunity that the plaintiff had to learn the situation, it cannot be said as a matter of law that he had notice that a pin too large for the link had been pounded in so that it could not be readily removed. If the pin had worked properly, and in the ordinary way, it was but the work of an instant to disconnect it from the car, or disconnect the link and pin from the engine, and couple with the remaining link and pin, and, while the defendant could have discovered the condition of the pin in the link by a proper inspection, it cannot be said as a matter of law that the plaintiff, in the hurry of the occasion when he was called upon, not to inspect, not to be looking out for difficulties that might be apparent only on careful examination, but to make an instantaneous coupling so that the train might proceed upon its mission, was guilty of contributory negligence.

A brief extract from the opinion of the Supreme Court of Pennsylvania in *Lee* v. *Woolsey* (42 Leg. Int. 375, Sept. 18, 1885) is appropriate here: "If an employee is in haste called upon to execute an order requiring prompt attention, he is not to be presumed necessarily to recollect a defect in machinery, or a particular danger connected with his employment, so as to avoid it. A prompt and faithful employee suddenly called upon by a superior to do a particular act cannot be supposed to remember at the moment a particular danger incident to its performance of which he had previous knowledge; and it would be most unreasonable to demand of him the thought and care which might be exacted when there is more time for observation and deliberation." (Citing Whart. on Neg. § 219.)

In this connection we will consider an exception taken in behalf of the defendant upon the trial to the charge of the court as to the duty of the plaintiff under the circumstances in which he was placed. The court had charged the jury that the measure of the plaintiff's diligence and care, under the circumstances, is such as would be expected of a man using ordinary care, and that, if the plaintiff did exercise reasonable and ordinary care he was absolved from the imputation of contributory negligence. This was excepted to and the defendant's counsel asked the court to charge the jury that the duty of the servant in this case was one of active vigilance requiring a diligent use of all of his faculties and the exercise of such precaution as his knowledge of the dangers incident to the business required he should use. "By the Court: I so charge. Mr. Gluck (defendant's attorney): I ask the Court to explicitly direct the jury that the rule laid down formerly by the court in his charge, that the servant should exercise only such reasonable and ordinary care, they are to disregard as not a proper rule." This the court then declined to charge. The point is made that though the court charged the proper rule he did not withdraw the former charge, and that, therefore, error was committed. A subsequent portion of the charge upon this subject the learned counsel has evidently overlooked, when the court said to the jury : " In order that there may be no misapprehension the court changes its charge with respect to the diligence required of the plaintiff, and charges, in addition to being ordinarily careful and prudent, he must have been active and vigilant in protecting himself from injury and in discovering anything that was out of repair, and active and vigilant in the performance of this duty he was called upon to perform at the time he received the injury." Taking the whole charge together it is apparent that the jury could not have been misled as to the true rule on that subject. The question of contributory negligence was properly submitted to the jury.

The trial judge, taking the whole charge together, in effect submitted to the jury as to whether the defect in the coupling apparatus (the large pin driven into the link) had existed for such a length of time as that the proper inspection would have detected it, and whether the defendant had omitted its duty of such inspection.

The appellant earnestly urges this as error, claiming that there

was no evidence to submit to the jury as to how long this condition had existed. It is true that no witness testified as to the length of time the pin had been fastened in the link, but the circumstances of the case may be considered in determining that question. As has been said, the car was a "foreign car" and belonged to the Pennsylvania railroad. As far as the record discloses, its first appearance in the defendant's service was on the 16th of November, 1894, when it was left by the way freight at a siding at Corfu, a way station upon defendant's railroad between Rochester and Buffalo. The car remained upon this siding until the twenty-second of November, when it was taken into the train. At that time the link pin was found in the hole of the link in the drawhead so tight that it could not be removed with the hand, and the evidence disclosed that the top of the pin indicated that it had been pounded into the link. The conductor of the train, after the injury, got it out with difficulty somehow and threw it away and connected the car to the engine by means of the link and pin in the engine. The inference may be drawn from the evidence that the car was not in service or connected with a train during the six days that it was left at Corfu. There was, therefore, no occasion to use the coupling apparatus or remove the pin or change it after it was disconnected from the train before the time of the accident. It is not probable that any employee on the railroad meddled with the coupling and pounded the pin into the link when there was no occasion to do so, nor are we to assume that any trespasser at that way station did it. The more reasonable view to take of the matter is that the link pin was found in the same condition in which it had been left six days before. This is especially so in the absence of all explanation on the part of the defendant as to the real condition during the time the car was in its possession at Corfu. (*Ousley* v. *Central R. R. & Banking Co.*, 12 S. E. Rep. [Ga.] 938.) This leads to the inquiry as to the duty of the defendant as to inspecting and learning the true condition of the coupler before it put this foreign car into the hands of its brakeman to operate. It is well settled that it was the duty of the defendant upon receiving this car into its service to make this inspection, and to make continuous inspections from time to time to see whether it was in a safe condition for its employees to operate. This duty was absolute and could not be delegated to others, and

the degree and care of inspection measured by the dangers to be avoided. (*Bailey* v. *The Rome, W. & O. R. R. Co.*, 139 N. Y. 302; *Goodrich* v. *N. Y. C. & H. R. R. R. Co.*, 116 id. 398, 402, 403; *De Graff* v. *N. Y. C. & H. R. R. R. Co.*, 76 id. 130.)

It does not appear that the defendant had made any inspection of this car or the coupling apparatus since it came into its service. Had such inspection been made it was within the knowledge of the defendant, and the burden was upon it to show such inspection. Here was a duty devolving upon the defendant to use reasonable care to have the coupling in safe condition so the plaintiff could use it without danger. This was an assurance which the law gave to the plaintiff when he attempted to make that coupling and upon which he had a right to rely, and this must be considered when we attempt to measure the care he was to exercise under the circumstances.

The trial court charged the jury that "the obligation which rests upon the defendant is that he shall provide for the use of the servant the tools and implements which he is required to use which are ordinarily safe for such use, and proper and fit." To this defendant's counsel excepted and insists that this was an erroneous rule, and that the court should have charged that the defendant was only bound to use reasonable care and prudence in furnishing such tools and implements.

In *Burke* v. *Witherbee* (98 N. Y. 565) the rule laid down was that the master's duty was to furnish "reasonably safe and suitable appliances;" this was quoted with approval in *Hickey* v. *Taaffe* (105 N. Y. 34) in the opinion of the court. In *De Graff* v. *N. Y. C. & H. R. R. R. Co.* (*supra*) the court said the master is bound to furnish suitable and safe machinery and appliances. In *Pantzar* v. *Tilly Foster Iron Mining Co.* (99 N. Y. 372) RUGER, Ch. J., concisely outlines the duty of the master as follows : " A master owes the duty to his servant of furnishing adequate and suitable tools and implements for his use, a safe and proper place in which to prosecute his work."

The same definition of the master's duty is found in *McGovern* v. *The C. V. R. R. Co.* (123 N. Y. 287).

The appellant's counsel cites but a single case in support of his position (*Harley* v. *B. C. M. Co.*, 142 N. Y. 34), where EARL, J.,

in the case of the breaking of a belt whereby a servant was injured, says the principles of law applicable to such a case as this have exposition in many decisions of this court, and then, after citing a number of cases, among which is *Burke* v. *Witherbee* and *Hickey* v. *Tuaffe* (*supra*), he proceeds : " The master does not guarantee the safety of his servants ; he is not bound to furnish them an absolutely safe place to work in, but is bound simply to use reasonable care and prudence in providing such a place.   He is not bound to furnish the best known appliances, but only such as are reasonably fit and safe.   He satisfies the requirements of the law if, in the selection of machinery and appliances, he uses that degree of care which a man of ordinary prudence would use having regard to his own safety if he were supplying them for his own personal use.   It is culpable negligence which makes the master liable, not a mere error of judgment."

We are not to assume that the Court of Appeals by this language intended to overrule the very decisions quoted with approval and the law as established in this State from the commencement of the existence of the Court of Appeals, but it is to be regretted that the courts in selecting their language upon such important questions, and where nice distinctions are vital, make statements which upon the surface may appear conflicting and confusing.   It is true that cases may be found in the books in many of the States where the language is used in both forms, one imposing an absolute duty upon the master to furnish reasonably safe appliances, and the other to exercise reasonable care in so doing, but it has never been held in any case to which we have been referred that it was error to charge the proposition in the language of the trial court in this case.

The defendant's counsel requested the trial court to charge the jury " that the pin driven into the link so tightly that it could not be removed, constituted in no sense a defective appliance."   This the court declined to charge upon an exception, to which the defendant's counsel takes the position indicated by the request to charge, and builds upon it a specious and ingenious argument in which he seeks to distinguish this case from the decisions in this State relating to defective couplers, overlapping drawheads and deadwoods, which are as follows : *Ellis* v. *N. Y., L. E. & W. R. R. Co.* (95 N. Y. 546); *Gottlieb* v. *N. Y., L. E. & W. R. R. Co.* (100 id.

462); *Goodrich* v. *N. Y. C. & H. R. R. R. Co.* (116 id. 398); *Lucco* v. *N. Y. C. & H. R. R. R. Co.* (87 Hun, 612; 34 N. Y. Supp. 277).

These cases, together with many others which appear in the reports of this State, indicate the care and solicitude with which the courts have sought to protect brakemen in the discharge of the most important and dangerous of their duties, the coupling of cars, and the courts have gone at great length in many cases in holding the master responsible if he has not furnished a safe coupling apparatus for the brakemen to use. The reason given for making an exception in the case at bar is that neither the link nor the pin is attached permanently to the car or drawhead; that they may be disconnected at any time, lost or thrown away and others substituted by the brakemen themselves.

Where links and pins are used in coupling cars they are an indispensable part of the coupling apparatus; without them the cars cannot be connected or the train made up; while they may be disconnected at the will of brakemen, if in proper condition, from the drawhead, they are none the less a part of the device or machinery by which the cars are coupled, and they are furnished by the master as a part of such device. The servant finds them, or should find them, ready for use when the hurried coupling has to be made; they are as much a part of the coupling apparatus as the drawhead itself, and the authorities cited have a direct bearing upon the subject we are considering. The learned counsel for the appellant has referred us to no case sustaining his novel position, but cases have been decided that seem to hold to the contrary.

In *Ousley* v. *Central R. R. & Banking Co.* (*supra*) the defendant furnished the plaintiff a drawbar to be used in coupling cars by him. The drawbar worked well the first time it was used, but failed on the second trial. Held, that the jury might, in the absence of explanation from the company, infer that the implement was defective.

In *Denver, T. & G. R. Co.* v. *Simpson* (26 Pac. Rep. [Col.] 339), where a brakeman had his hand crushed while attempting to couple two cars in the dark, it was held that he could recover for his injuries where the company had failed to furnish *suitable links* for the coupling.

In *Muirhead* v. *Hannibal & St. J. R. Co.* (15 S. W. Rep. 530; 103 Mo. 251) one of the cars had no drawhead, but a switching rope was used. It was held to be a question for the jury whether this rope was a reasonably safe appliance.

In *St. Louis, I. M. & S. Railroad Co.* v. *Davis* (15 S. W. Rep. [Ark.] 895), where the deceased went between two cars to uncouple them, *the pin was fast* and detained him until a frog was reached, in which his foot was caught. Held, that the evidence tended to prove a structural defect which would charge the company with liability without other proof that it had notice of the defect.

We perceive no error in the charge that the link and pin were a part of the appliance or device of the coupling.

Other exceptions were argued by the learned counsel for the appellant, which we have carefully considered, but they indicate no error, and we do not deem it necessary to discuss them.

The judgment and order appealed from should be affirmed, with costs.

Order reversed and a new trial ordered, with costs to abide the event.