(70 App. Div. 495.)

DEVOE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. March 11, 1902.)

1. RAILROAD EMPLOYE—INJURIES—RISKS ASSUMED.

A car inspector, while standing between two empty passenger coaches in a railway station, was killed by their being pushed together. An employé testified that deceased said he was going down to uncouple the cars and help the conductor; that he laid his hammer on the platform when he went between the cars. Immediately after the accident it was discovered that the safety chains had been uncoupled and the air cock turned off, and there was no evidence that this had been done by other employés. The evidence showed that the cars and couplings were not out of repair, and that there was no occasion for an inspector's going between them. *Held* to show that deceased went between the cars to uncouple them, and not to inspect them, and therefore, being engaged in work outside of his regular employment, deceased had assumed the risk.

2. SAME—FELLOW SERVANTS.

If the engineer was negligent in pushing his engine against the cars deceased was between, it was the negligence of a fellow servant, and the company was not liable.

3. SAME—VIOLATION OF RULES—CONTRIBUTORY NEGLIGENCE.

A car inspector who goes between two cars without stationing a man outside for his protection, as required by the company's rules, is guilty of contributory negligence, especially where, if he had looked, he would have seen an engine 15 feet away backing down on him.

Appeal from trial term, Onondaga county.

Action by Jeanette C. Devoe, as administratrix of William H. Devoe, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

Leroy B. Williams, for appellant.
William S. Jenney, for respondent.

DAVY, J. This action was brought to recover, under the statute, damages for the death of plaintiff's intestate, alleged to have occurred through the negligence of the defendant. The intestate had been in defendant's service as car inspector at its passenger station in Syracuse for seven years prior to the accident, which occurred shortly after noon on July 19, 1899. While he was between two empty passenger cars, either in uncoupling or inspecting them, they were suddenly pushed together, and his head was caught and crushed between the cars, from which injury he died the following day. The negligence of the defendant, it is alleged, was its failure to enjoin upon its car inspectors the use of blue lights and blue flags for the purpose of protecting its employés while at work in and about trains at passenger stations, instead of pursuing the system adopted and followed by the company at the station in Syracuse, which required a car inspector to protect himself when making repairs to cars standing in the train shed by stationing a man opposite the car which he was under. It appears that in 1895 the defendant printed rules, one of which required a blue flag by day

and a blue light by night to be placed on the end of a car, engine, or train while men were at work under or about them. This rule was not enforced by the car inspectors. Mr. Beatty, the foreman of the car department, testified that in 1893 the company adopted and promulgated verbal rules to the effect that inspectors should not, in the ordinary inspection, go between cars, or under them, and, in case it became necessary to go between or under cars, they should station a man at or near the car to stand on guard for their protection. These rules were communicated by Beatty to the section master, the engineers, firemen, conductors, the entire train crew, and the men working around the trains, who were instructed that they must not under any circumstances go under or between the cars, whether there was an engine attached or not, without protecting themselves by having a man stand on guard. He repeated these orders frequently to the deceased and other employés of the defendant. This system of inspecting cars had been adopted and pursued at the Syracuse station for a number of years, and had been universally followed by the inspectors. Mr. Beatty said he had occasionally used the blue flag and blue light, but he found them comparatively useless, as they did not afford sufficient protection to the employés; that under his plan the inspectors were as safe as it is possible to make them, and more safe than they could be under the blue light and blue flag system. The reasons he gave for placing a man on guard were that inspectors under cars are out of sight of a blue light or flag, and would not know how long the signal would remain on the car after they began work; a new trainman or an outsider might take the signal down; the light might blow out, or the flag be removed; a car being run in on the track might go too far, owing to a failure of the brakes to respond promptly; an engine backing up to connect with the train might fail to stop in time; a train entering a station might be going too fast to stop; a misplaced switch might throw a train or car into the cars that were being inspected or repaired. Under these circumstances, a man on guard, while he might not be able to prevent a collision of the cars, could warn the repair men, and have them out from under the cars in time to avoid any accident; and he could also give signals to the approaching engine or train to stop. It is evident that Mr. Beatty's long experience in conducting inspection and repairs entitles his testimony to great weight, especially when it appears that during his long term of office at the Syracuse station he never knew of a train being moved when workmen were under it when the instructions as to protecting workmen were complied with, and that the accident to the deceased was the first injury received by any of his inspectors during the 10 years that he had been in charge of this station, where from 50 to 60 passenger trains are inspected daily.

It appears that shortly before the accident train No. 10 came in from the north on the Rome, Watertown & Ogdensburg track, which joins the northerly tracks, known as Nos. 7 and 6, in the New York Central station, by a Y and a switch. The time of the arrival was about 12 o'clock noon. The engine on No. 10 went west on

track 6 to the engine house, leaving six or seven cars, composing train No. 10, standing on track 6. When train No. 4 came in, it stopped on track 6, just west of the switch, and its engine also went west on track 6 to the engine house. The deceased was between the two easterly cars of train No. 4 when the shifting engine backed train No. 10 against it, and the deceased was caught between the two cars. No one saw just how the accident occurred. Hugh Crocker, a car cleaner at the New York Central station in Syracuse, was working inside of a car at the time, and was the last man to converse with the deceased before he went between the cars. He says that he first saw the deceased at the end of the smoker, which was the first passenger car east of the baggage car on train 4, and at that time Crocker was on the platform, and the deceased was on the ground. Crocker asked him to come into the coach, and he said, "No," he would go down and uncouple the cars, and help Sweeney, who was the conductor of the shifting engine, and who was handling these cars at the time of the accident. Crocker says that the deceased laid his hammer on the platform when he went between the cars. A witness by the name of Peck, who was a trainman on the Auburn road, and who was standing beside his train on the south track opposite the scene of the accident, saw the deceased come down from the platform of one of the cars just before the accident, and go between the cars. Immediately after the accident, it was discovered that the safety chains were uncoupled and the air cock was turned off, and there is no evidence that this was done by any of the other employés. The inference to be drawn from all the testimony and the surrounding circumstances is that the deceased went between the cars for the purpose of uncoupling them. This fact seems to be so clearly established that no construction of the facts as drawn from the evidence would warrant a different conclusion. There was no excuse for the conduct of the deceased in exposing himself to danger. The notice to him not to go between or under the cars under any circumstances unless a man was stationed by the side of the car, and the continuance of the deceased in the service of the company, with the knowledge of such a rule, made its terms a part of the contract of employment, so that it was a breach of duty on his part to go between the cars, either to inspect or to uncouple them. There were no defects in the brakes or about the cars, and there was no occasion for him, as inspector, to go between them. The rule is well settled that, where an employé at the time of receiving an injury is in the performance of duties outside of his regular employment, he will be held to have assumed the risk incident to those duties, and cannot recover. La Croy v. Railroad Co., 132 N. Y. 570, 30 N. E. 391; Sutherland v. Railroad Co., 125 N. Y. 737, 26 N. E. 609. It is an elementary principle of law that, between master and servant, the servant who undertakes the performance of hazardous duties assumes the ordinary risks incident to the business. It is undoubtedly the duty of the employer to provide the employés with a safe working place, and with safe machinery and appliances. The employer is not bound, however, to exercise the highest degree of skill and care in discharging this duty, but is only

required to exercise ordinary care and skill. His duty is one which the law imposes upon the master, and it is one which cannot be delegated so as to relieve him from responsibility. The agent to whom it is intrusted, whatever his rank may be, acts as the master in discharging it. There are likewise duties resting upon the employé as well as upon the employer. The law imposes obligations upon one as well as upon the other. One of the obligations imposed upon the employé is that he shall assume the risks and dangers which are known to him, incident to the employment, or which by the exercise of reasonable care he might have known. No employé is obliged to remain in the service of a railroad company when he knows that the service is dangerous, but if he does remain he assumes all the risks arising from the known danger. There is another familiar rule, and that is, when an employé enters into or remains in the service of a railroad company, having knowledge of its rules and regulations, he must be held as undertaking to acquiesce therein, and, if he is afterwards injured by reason of his violation of such rules and regulations, he cannot claim damages because they were unreasonable. La Croy v. Railroad Co., supra; Byrnes v. Railroad Co., 113 N. Y. 251, 21 N. E. 50, 4 L. R. A. 151. The deceased, when he entered the employment of the defendant, was informed of the rules which he and other car inspectors were to follow. At the time of the accident he had been in the employ of the company as car inspector, and had worked under these rules, for a number of years; he had witnessed the mode of switching and coupling cars at the station almost daily, and knew the risks incident to that kind of business. He knew that it was dangerous to go between the cars for any purpose, either to inspect or to couple them, for the reason that cars were being moved continuously from one track to another, and pushed against each other. The danger was as apparent to him, as it was to the defendant, and to every ordinary workman about the station. The danger was not of such a character as to require a skilled mechanic or an expert to detect it.

If the engineer was negligent in pushing the engine against the cars that the deceased was between, it was the negligent act of a fellow servant of the deceased, and not of the master. Berrigan v. Railroad Co., 131 N. Y. 582, 30 N. E. 57.

It was held in Haskin v. Railroad Co., 65 Barb. 134, that where one enters into the employ of a railroad company, with full knowledge that no provision has been made for protecting its servants against injury from moving trains or engines, he has no claim to recover damages if he sustains an injury.

Railroad companies must be permitted, in order to protect passengers and employés, to make such reasonable rules as they think best. In this case the defendant had made and promulgated rules for the protection of the car inspectors at the Syracuse station, and these rules at the time of the accident were actually in force, which rendered any other rules unnecessary. Corcoran v. Railroad Co., 126 N. Y. 673, 27 N. E. 1022; Kudik v. Railroad Co., 78 Hun, 492, 29 N. Y. Supp. 533; Davis v. Railroad Co., 1 App. Div. 178, 37 N. Y. Supp. 157.

The evidence shows that the cars and couplings where the deceased was injured were not out of repair, and that there was no occasion for his going between them. He well knew that his duty to the defendant and a proper regard for his own safety required him to obey the rules. Had he obeyed them, or exercised that reasonable care and caution which the situation demanded, he would have avoided the accident. Had he exercised the same degree of care that is demanded of a traveler upon the highway in approaching a railroad crossing, he would not have been injured. If he had looked, he would have seen. Sweeney, the conductor, who was only 15 feet from him, and he would also have seen the train backing down. Albert v. Railroad Co., 80 Hun, 152, 29 N. Y. Supp. 1126. It seems to us that the evidence fails to establish negligence on the part of the defendant, but the contributory negligence of the deceased was clearly established as a matter of law; and the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide event. All concur.