(159 App. Div. 294.)

### TISDALE v. GEO. W. JACKSON, Inc.

(Supreme Court, Appellate Division, Second Department. November 28, 1913.)

MASTER AND SERVANT (§ 222*)—MASTER'S LIABILITY—ASSUMPTION OF RISK.

> Plaintiff, a tunnel worker, who apprehended the danger of a loose stone falling at some time and attempted to dislodge it, but who, when informed by the foreman that he should not bother with it, that it would not fall during that shift, being of the same opinion, proceeded in his regular work without objection, voluntarily took the risk; since, while the foreman's judgment may have confirmed, it did not supplant, his own judgment.

> [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 648–651; Dec. Dig. § 222.*]

Burr and Carr, JJ., dissenting.

Appeal from Trial Term, Westchester County.

Action by Sidney Tisdale against Geo. W. Jackson, Incorporated. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Judgment and order reversed, and new trial granted.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and PUTNAM, JJ.

John H. Jackson, of New York City (Ambrose F. McCabe, of New York City, on the brief), for appellant.

Thomas J. O'Neill, of New York City (L. F. Fish, of New York City, on the brief), for respondent.

JENKS, P. J. This is a common-law action by servant against master for failure to adopt and to enforce a proper method of doing work. The defendant, a contractor for aqueduct work, was blasting a tunnel from the base of a shaft. First an upper section of the tunnel was removed for some distance, and then the corresponding lower section. After a blast, the débris was taken away (called "mucking"), and then the usual method of doing this kind of work was to sound and to test the walls and roof to discover any "loose stones" partly dislodged by the blast. This is called "scaling." The work was constant and was doing by three shifts of men laboring for 8 hours respectively. The plaintiff went to work for the first time in a shift at 4 p. m. of October 20, 1910. The shift was made up of a foreman, Gordon, 4 drillers, and 4 helpers. The plaintiff testifies that a blast had been fired before his shift went down the shaft, that, after it went down, "mucking" was done by the shift for some hours, and thereafter drilling was begun between 8 and 9 p. m. He testifies that he was directed by Gordon to work at drilling in a certain place, and just after he had begun his task a stone that had been loosened by the blast fell from the roof of the tunnel and injured him. The plaintiff contends that there had been no "scaling" done. There was absolutely contradictory testimony upon this issue. The learned court in its instructions to the jury limited the defendant's negligence to its duty of establishing a reasonably safe method of work and a reasonably vigilant oversight in mainte-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nance thereof, and submitted the specific question: What degree of "scaling," if any, was required, and, if not exercised, was such failure the proximate cause of the accident? I shall not discuss the question whether the proof was sufficient to justify a finding upon the issue of "scaling" in favor of the plaintiff.

The plaintiff, 30 years old, had labored at tunnel work for 15 years. On his direct examination he testifies that during the "mucking" he saw this particular stone, perceived that it was "loose," tried it, and hit it with an iron bar, but that Gordon took the bar away, saying:

"Don't be bothered with taking down that ground; that ground will stand this shift while we are working."

The plaintiff says that he believed Gordon. On his cross-examination he reiterates his "broad experience" of 15 years at this kind of work, including "mucking," "scaling," and drilling. He admitted that when he saw a "loose stone" he knew without information from any one that it was likely to fall. He testifies that he saw this particular stone which he began to take down, for he knew that otherwise it would fall. He says that Gordon "stopped" him. His language was:

"He told me not to bother with it, that it would stand this shift, so I had to stop. Q. You saw that was loose? A. Yes. Q. You thought that would fall? A. I believed that would fall. I did not think it would fall on that shift. * * * I believed in the foreman, what he say (sic), but I tried to take it down. Q. You took the foreman's word? A. Yes, sir. * * * Q. You were going to take it down? A. I was going to try to. * * * Q. And Gordon told you not to take it down? A. Not to take it down. Q. And then you stopped? A. Not to bother with it, didn't say not to take it down. Not to bother with it."

I think that the case is not complicated with the question of coercion by Gordon. See Labatt on Master and Servant, § 383. Gordon had expressed the opinion that the stone would not fall during the work of that shift, and the plaintiff testifies that he was of the same opinion. And so when Gordon said "not to bother with it," and the plaintiff ceased his attempt at dislodgment, he did so upon his own judgment that the stone would not fall while he was at work. It does not appear that the plaintiff's knowledge of the danger was imperfect as compared with that of Gordon. The latter is not shown as possessed of greater experience or of wider knowledge. The plaintiff says of Gordon:

"I had seen him around at times for five or six years. I know he was a pretty experienced man, too; he has had quite an experience at this same kind of work."

How, then, can plaintiff be heard to say that he went about his work contrary to his own judgment, in reliance upon Gordon's more experienced judgment? In fine, the plaintiff comprehended the danger that this "loose" stone would fall some time, and therefore attempted to dislodge it; but when Gordon told him that he should not bother with it, that it would not fall during the work of that shift, plaintiff, being of like opinion, proceeded without hesitation or objection to his regular work of drilling under Gordon's direction. He thus voluntarily took the risk. Gordon's judgment may have confirmed, but it did not supplant, the judgment of the plaintiff.

Labatt on Master and Servant says (section 1375):

"The effect of the servant's knowledge where his assumption of the risk is relied upon is open to no doubt. If that knowledge is imperfect, and excusably so, the action is, upon general principles, not barred. But an assurance that appliances are in good condition manifestly cannot prevent the operation of a defense which is regarded as completely made out, when it has been proved that the risk was known to and comprehended by the servant."

See Crown v. Orr, 140 N. Y. 450, 35 N. E. 648; Graves v. Brewer, 4 App. Div. 327, 38 N. Y. Supp. 566; McCarthy v. Washburn, 42 App. Div. 252, 58 N. Y. Supp. 1125.

The judgment and order must be reversed, and a new trial must be granted; costs to abide the event.

PUTNAM, J., concurs. THOMAS, J., concurs upon the grounds stated in the opinion, and also upon the further ground that no negligence on the part of defendant on the occasion in question is shown, and that plaintiff assumed the risk of any danger that arose from the method of carrying on the work. BURR and CARR, JJ., dissent.