SARAH KNISLEY, Respondent, *v.* PASCAL P. PRATT et al., Appellants.

1. MASTER AND SERVANT — THE FACTORY ACT — OBVIOUS RISKS. An employee may, by entering upon the employment with a full knowledge of all the facts, waive, under the common-law doctrine of obvious risks, the performance by the employer of the duty to furnish the special protection prescribed by the Factory Act (Chap. 409, Laws of 1886, as amended by chap. 398, Laws of 1890) regulating the employment of women and children in manufacturing establishments.

2. THE FACTORY ACT — ASSUMPTION OF OBVIOUS RISKS. There is no reason in principle or authority why an employee should not be allowed to assume the obvious risks of the business as well under the Factory Act as otherwise.

3. ASSUMPTION OF OBVIOUS RISK — DEFEAT OF RECOVERY FOR INJURY. A woman employee over twenty-one years of age, who had, under the

common-law doctrine, assumed the obvious risk of operating a machine
with unguarded cog wheels, in an establishment subject to the Factory
Act, which act requires cog wheels to be guarded, having been injured
through the lack of such guard, in cleaning the machine while in motion —
an operation not prohibited by the act in the case of women employees over
twenty-one years of age — brought an action against her employer for
damages, on the ground of negligence, and was non-suited. *Held*, that
the non-suit was proper, on the ground of the assumption of the obvious
risk by the plaintiff.

*Knisley* v. *Pratt* (75 Hun, 323), reversed.

(Argued January 10, 1896; decided February 18, 1896.)

APPEAL from order of the General Term of the Supreme
Court in the fifth judicial department, made January 18, 1894,
which set aside a non-suit and granted a new trial on excep-
tions ordered to be heard in the first instance at General
Term.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*John G. Milburn* for appellants. The risk in cleaning the
machine with the cog wheels unguarded, as they were during
the entire period of her service, was obvious and known to the
plaintiff, and was, therefore, assumed by her. (*Wright* v. *N. Y.
C. R. R. Co.*, 25 N. Y. 566; *Gibson* v. *Erie R. Co.*, 63 N. Y.
452; *De Forest* v. *Jewett*, 88 N. Y. 264; *Powers* v. *N. Y., L.
E. & W. R. R. Co.*, 98 N. Y. 274; *Marsh* v. *Chickering*, 101
N. Y. 396; *Sweeney* v. *B. & J. E. Co.*, 101 N. Y. 520; *Shaw*
v. *Sheldon*, 103 N. Y. 667; *Hickey* v. *Taaffe*, 105 N. Y. 26;
*Appel* v. *B., N. Y. & P. R. Co.*, 111 N. Y. 550; *Buckley* v.
*G. P. & R. Manufacturing Co.*, 113 N. Y. 540; *Williams* v.
*D., L. & W. R. R. Co.*, 116 N. Y. 628; *Crown* v. *Orr*, 140
N. Y. 450; Laws of 1886, chap. 409; Laws of 1887, chap. 462,
§§ 16, 20; Laws of 1889, chap. 560; Laws of 1890, chap. 398,
§§ 10, 13; Laws of 1892, chap. 673; Holland on Juris. 280;
*Willy* v. *Mulledy*, 78 N. Y. 310; *Freeman* v. *G. F. P. M.
Co.*, 70 Hun, 530; 142 N. Y. 639; *White* v. *W. L. Co.*, 131 N.
Y. 631; *O'Maley* v. *S. B. G. L. Co.*, 158 Mass. 135; *Good-
ridge* v. *W. M. Co.*, 160 Mass. 234; *Britton* v. *G. W. C.*

*Co.*, L. R. [7 Ex.] 130; *Blamires* v. *Ry. Co.*, L. R. [8 Ex.] 288, 289; *Caswell* v. *Worth*, 5 E. & B. 855; *McRickard* v. *Flint*, 114 N. Y. 222.) No question of negligence on the part of the defendant was raised by the fact that there was no shifter for moving the belt, or that the machinery was cleaned when in motion. (Laws of 1890, chap. 398, § 12; Laws of 1887, chap. 462, § 11.)

*Day & Romer* for respondent. Plaintiff is entitled to the benefit of every fact that the jury could have found from the evidence given, and to every legitimate inference warranted by the proofs. (*McNally* v. *P. Ins. Co.*, 137 N. Y. 389.) The rule is unqualified that a master is bound to use all reasonable care, diligence and caution in providing for the safety of those in his employ, and furnish for their use in his work safe, sound and suitable tools, implements, appliances and machinery in the prosecution thereof, and keep the same in repair. (*Benzing* v. *Steinway*, 101 N. Y. 547; *McGovern* v. *C. V. R. R. Co.*, 123 N. Y. 280.) The failure to perform a duty imposed by statute, when, as the consequence, an injury results to another, is evidence upon the question of negligence of the party charged with such failure. (*McRickard* v. *Flint*, 114 N. Y. 222; Laws of 1890, chap. 398; Laws of 1886, chap. 409; *McLoughlin* v. *Annfield*, 12 N. Y. Supp. 164; *Koster* v. *Noonan*, 8 Daly, 233; *Pauley* v. *S. G. & L. Co.*, 131 N. Y. 90; *Willy* v. *Mulledy*, 78 N. Y. 310; *Clark* v. *Holmes*, 7 H. & N. 937; *Hough* v. *R. R. Co.*, 100 U. S. 213; *R. R. Co.* v. *Spangler*, 44 Ohio St. 471; Tiedman on Lim. 255, § 98; *Runt* v. *Herring*, 21 N. Y. Supp. 244; *Purdy* v. *R., W. & O. R. R. Co.*, 125 N. Y. 209; *White* v. *Parker*, 8 Barb. 48.)

Bartlett, J. The plaintiff seeks to recover damages for loss of her left arm, caused by the alleged negligence of the defendants, who were the proprietors of a hardware factory where plaintiff was employed at the time of the accident in operating what is known as a "punching machine."

A person using this machine is seated at a bench, the top of which is about thirty-two inches from the floor and covered with plank about five inches in thickness. The machine is about twenty-two inches wide and four feet high, with an iron bed plate bolted to the bench. Two iron posts four feet high, connected at the top by an iron cross piece, make a substantial frame for the machine.

Near the top is a shaft passing through the posts on one end of which is a drum and belt connecting with shafting; on the other end are a small cog wheel, about seven inches in diameter, running close to the frame and outside of it, and a large fly wheel.

Immediately under this shaft is another shaft having a cog wheel about two feet in diameter, which is operated from the cog wheel on the upper shaft.

In the center of the lower shaft is an iron rod to which is attached a punch, arranged on an eccentric so that the revolution of the shaft causes the punch to lift and lower sixty times per minute.

There was no shifter to throw off the belt so as to stop the machine and the cog wheels were unguarded.

The plaintiff, the machine being in motion, was engaged in cleaning it, which consisted in rubbing the dirt and oil off the punch and uprights with a piece of waste held in her left hand, and in some way her hand was caught between the cog wheels, causing such injuries to it and the arm as to necessitate amputation of the latter near the shoulder. Plaintiff, being of full age, entered the employ of defendants in May or June, 1890, and the accident happened September 24th, 1891; she testified that she worked off and on about three months on these punching machines prior to the accident, sometimes an hour, sometimes half a day at a time as required; that up to the time of the accident she had worked twelve different times on different days upon one of the punching machines and had cleaned it about seven or eight times.

It is insisted on behalf of the plaintiff that even if, under the admitted facts, she would by the rules of the common law

be deemed to have assumed not only the ordinary, but the obvious risks of the business, yet the provisions of the statute commonly known as the Factory Act, would enable her to recover. (Ch. 398, Laws 1890, page 753, amending ch. 409, Laws 1886, entitled, " An act to regulate the employment of women and children in manufacturing establishments and to provide for inspectors to enforce the same.")

The complaint makes no reference to the statute, but charges the defendants in the usual way with neglect to provide safe and suitable machinery and a safe and proper place in which to work.

The statute was referred to at the trial in the General Term and on the argument before this court; we shall, therefore, consider this case as presenting the question whether the plaintiff is entitled to recover by reason of this statute, even if under the principles of the common law, as applied to the facts, she had assumed the obvious risks of the employment.

The statute (Laws 1890, ch. 398, p. 756, sec. 12) provides that it shall be the duty of the owner of any manufacturing establishment to furnish, in the discretion of the factory inspector, belt shifters for the purpose of throwing on or off belts or pulleys; it also provides absolutely that cogs shall be properly guarded.

The belt shifter is out of this case, as no effort was made to prove that the inspector had ordered it to be placed on the machine which injured the plaintiff and that the owner had failed to obey. It is admitted that the cog wheels were unguarded on this machine.

The plaintiff was injured by reason of that condition of the cog wheels, and it appears that a piece of sheet iron put in between the upright and the gear wheels would have protected the hand of the operative while cleaning the machine when in motion.

It was not unlawful to permit plaintiff to clean the machine when in motion, as the statute provides that " no female, under the age of twenty-one years, * * * shall be allowed to clean machinery when in motion." (Ch. 398,

Laws 1890, sec. 12.)   The plaintiff was over twenty-one years of age.

The defendants are chargeable, therefore, with one omission only under the statute, viz., a failure to properly guard the cog wheels of the punching machine.

In order to sustain the judgment in favor of plaintiff it is necessary to hold that where the statute imposes a duty upon the employer, the performance of which will afford greater protection to the employee, it is not possible for the latter to waive the protection of the statute under the common-law doctrine of obvious risks.

We regard this as a new and startling doctrine calculated to establish a measure of liability unknown to the common law, and which is contrary to the decisions of Massachusetts and England under similar statutes.

It should be remarked at the outset that the Factory Act in this state does not, in terms, give a cause of action to one suffering an injury by reason of the failure of the employer to discharge his duty thereunder.

An action for such injury is the ordinary common-law action for negligence and subject to the rules of the common law. (*Caswell* v. *Worth,* 5 Ellis & Blackburn, 855.)   The principle contended for seems to rest, if it can be maintained at all, upon a question of public policy.   The Factory Act, it is said, is passed to regulate the employment of women and children and imposes upon the employer certain duties and subjects him to specified penalties in case of default; that a sound public policy requires the rigid enforcement of this act, and it would contravene that policy to permit an employee by implied contract or promise to waive the protection of the statute.

We think this proposition is essentially unsound and proceeds upon theories that cannot be maintained.

It is difficult to perceive any difference in the quality and character of a cause of action whether it has its origin in the ancient principles of the common law, in the formulated rules of modern decisions, or in the declared will of the legislature.

48

Public policy in each case requires its rigid enforcement, and it was never urged in the common-law action for negligence that the rule requiring the employee to assume the obvious risks of the business was in contravention of that policy.

It is possible that the statute imposes upon the employer duties under which he did not rest at common law.

It may be asked, if the doctrine of obvious risks is applied to the statute, under what circumstances could the employee sue?

It is well settled that the risks of the service a servant assumes in entering the employment of a master are those only which occur after the due performance by the employer of those duties which the law enjoins upon him. (*Benzing* v. *Steinway & Sons,* 101 N. Y. 552; *McGovern* v. *Central Vermont R. R. Co.,* 123 N. Y. 280.)

The rule as to the risks of the service, or ordinary risks, is entirely distinct from the rule of obvious risks, and if the statute has added to the duties which the law enjoins upon the employer before the servant can be subjected to the rule of ordinary risks, then the default of the employer in the discharge of his statutory duty, resulting in injury to the employee, would enable the latter to sue.

Such a construction of the statute would not in any way limit the doctrine of obvious risks.

This court has frequently recognized the general rule that whenever one owes another a duty, whether such duty be imposed by voluntary contract or by statute, a breach of this duty, causing damage, gives a cause of action.

In *Willy* v. *Mulledy* (78 N. Y. 314) a recovery was permitted against a landlord who had failed to provide proper fire escapes as required by the charter of the city of Brooklyn.

In *Pauley* v. *Steam Gauge & Lantern Co.* (131 N. Y. 95) it was suggested that for a failure of duty on the part of an employer under the Factory Act that in addition to the public remedy for the enforcement of penalties, the injured employee had his action for damages.

We come then to the rule of the assumption of obvious risks and it may well be doubted whether it can be said to rest wholly upon the implied agreement of the employee. The Supreme Judicial Court of Massachusetts in *O'Maley* v. *South Boston Gas Light Co.* (158 Mass. 135), use this language :

" The doctrine of the assumption of the risks of his employment by an employee has usually been considered from the point of view of a contract, express or implied, but as applied to actions of tort for negligence against an employer, it leads up to the broader principle expressed by the maxim, *Volenti non fit injuria*, one who, knowing and appreciating a danger, voluntarily assumes the risk of it, has no just cause of complaint against another who is primarily responsible for the existence of the danger. As between the two, his voluntary assumption of the risk absolves the other from any particular duty to him in that respect, and leaves each to take such chances as exist in the situation, without a right to claim anything from the other. In such a case there is no actionable negligence on the part of him who is primarily responsible for the danger."

Where the obvious risks of the business result in injury the inability of the employee to sue is due to the fact that he voluntarily assumed those risks, not necessarily under an implied contract to do so, but by an independent act of waiver evidenced by his entering the employment with a full knowledge of all the facts.

This distinction is not, however, of great importance in the view we take of the statute and its effect upon the rights of the parties.

We are of opinion that there is no reason in principle or authority why an employee should not be allowed to assume the obvious risks of the business as well under the Factory Act as otherwise.

There is no rule of public policy which prevents an employee from deciding whether, in view of increased wages, the difficulties of obtaining employment, or other sufficient reasons, it

may not be wise and prudent to accept employment subject to the rule of obvious risks.

The statute does indeed contemplate the protection of a certain class of laborers, but it does not deprive them of their free agency and the right to manage their own affairs.

In Massachusetts they have a statute called the Employers' Liability Act (St. 1887, ch. 270); it provides for a civil remedy at the suit of the injured party in express terms.

In the case of *O'Maley* v. *South Boston Gas Light Co.* (158 Mass. 135), which was brought under this statute to recover damages for injuries received by the plaintiff who, while wheeling coal in a barrow on a run in one of defendant's coal sheds, fell off and was injured, it was held that it was a defense to the action to show that plaintiff, when he entered upon the employment, knew and fully appreciated the danger to which he was to be exposed.

A few extracts from the opinion will show how the statute has been construed in Massachusetts. The learned judge says:

" If the action were at common law it would be too plain for argument that the plaintiff took the risk of such accidents as that which happened; * * * but it is contended that, under the statute referred to the rule is different. * * * The statute does not attempt to take away the right of the parties to make such contracts as they choose, which will establish their respective rights and duties. * *. * It would be unreasonable to attempt to require every one hiring laborers to have the safest place and best machinery possible for carrying on his business. It would be an unwarranted construction of the statute which would tend to defeat its object to hold that laborers are no longer permitted to contract to take the risk of working where there are peculiar dangers from the arrangement of the place and from the kind or quality of the machinery used. Nothing but the plainest expression of intention on the part of the legislature would warrant giving the statute such an interpretation.

" We have no doubt that any one may expressly contract to take the obvious risks of danger from inferior or defective

machinery as well since the enactment of this statute as before."

*Goodridge* v. *Washington Mills Co.* (160 Mass. 234) was another case under the same statute, and involved, as does the case at bar, uncovered or unguarded gears. It was held plaintiff could not recover.

The case of *Britton* v. *Great Western Cotton Co.* (L. R. [7 Ex.] 130) involved the construction of the English act (7 Vict. Ch. 15), which imposed on the defendant the unqualified duty to fence the fly wheel connected with the steam engine or other motive power.

This duty it failed to perform, and plaintiff's intestate, on the sixth morning of his employment, undertook to grease the bearings between the fly and spur wheels, was caught by the fly wheel and killed.

The plaintiff recovered on the ground that the dangerous character of the employment was not so obvious that deceased must necessarily have been taken to have known it.

It is clear from the language of the court that the doctrine of obvious risks would have been applied had the facts warranted it. BRAMWELL, B., said (p. 138): "They are in default to begin with, and the mere circumstance that the deceased entered on a dangerous employment does not exonerate them unless he knew the nature of the risk to which, in consequence of the default, he was exposed."

PIGOTT, B., said: "I do not think we can safely say that he must have known the risk he was running. The place was, no doubt, a dangerous place, but he may very well have been ignorant of the real nature of the risk."

The facts in the case at bar, whether it be considered as an action for negligence at common law, or under the statute, show conclusively that the plaintiff assumed the obvious risk of working on the machine, in operating which she was injured.

It is impossible not to feel great sympathy for this unfortunate plaintiff, who has been maimed for life, but her recovery is barred by legal principles that are salutary and proper in the general administration of justice.

The order of the General Term should be reversed and judgment ordered for defendants against plaintiff on non-suit, with costs.

All concur, except Haight, J., not sitting, and Vann, J., dissenting.

Ordered accordingly.