## DE YOUNG v. IRVING.

(Supreme Court, Appellate Division, Second Department. May 8, 1896.)

1. MASTER AND SERVANT—REQUIRING SERVANT TO CLEAN MACHINE.

In an action by a servant for personal injuries received while cleaning a machine which she operated, but which her contract of employment did not require her to clean, she testified that defendant came into the room where she was working, and said, angrily, "This is a pretty way the work is going on here!" that the machine "ought to be cleaned," and that it was in

no condition to be used, to which she replied that the machine had recently been cleaned, and that he then said that it must be cleaned, but sent no one to clean it. *Held*, that such evidence was sufficient to justify a finding that defendant directed plaintiff to clean the machine.

2. SAME—INSUFFICIENT NUMBER OF FELLOW SERVANTS.
   Where a servant was injured by having her hand caught while cleaning a machine which she operated, the injury was not the result of want of a sufficient number of fellow servants, as no number of fellow servants could have saved her from having her hand caught in the machine while cleaning it.

3. SAME—FAILURE OF MASTER TO MAKE RULES.
   In such case the injury was not caused by failure of the master to make rules, as it did not occur from any act or failure on the part of a fellow servant.

4. SAME—FACTORY ACT—WAIVER OF PROVISION.
   An employé in a factory may waive the protection afforded by Laws 1892, c. 673, § 8, which provides that "no woman under 21 years of age shall be allowed to clean machinery while in motion."

Appeal from circuit court, Richmond county.

Action by Margaret B. De Young against John Irving for personal injuries. The complaint was dismissed, and plaintiff appeals. Affirmed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Howard R. Bayne, for appellant.
William M. Mullen, for respondent.

CULLEN, J. This action is servant against master, to recover damages for personal injuries. The defendant owned and operated a factory in which were made "crinoline" and "tarletan." The plaintiff was in the employ of the defendant. At the time of the accident she was 19 years of age. Her particular duty at that time was to feed a drying machine. The machine consisted of several rollers, partly or wholly around which the cloth passed. The rollers were hollow cylinders. The first was cold. The others were heated by the introduction of steam into them. The duty of the plaintiff was to guide the cloth into the clamps, by which it was carried over the cylinders, or "cans," and thence to the floor below. Contact with the hot cylinders dried and pressed the cloth. Two boys, 15 years old, aided the plaintiff in straightening and feeding the cloth. This was all the force engaged about the machine. The evidence does not show very clearly whose duty it was to clean the cylinders, or who, in the course of the work, actually did clean them. The plaintiff testified that she was not employed to clean the cylinders, nor, prior to the accident, had she ever been directed to do so. But afterwards she stated that she had cleaned them, after half-past 5 o'clock (the operation of the factory then ceased), when they ran slowly, and there was no cloth in them. As nearly as can be gathered from the whole evidence, it would appear that, while the plaintiff had at times cleaned the cylinders, ordinarily she only cleaned the chains, and the two boys cleaned the cylinders. This accords with the statement of both counsel made on the argument. The evidence also tended to show that the cans were cleaned only

when there was no cloth passing through them, and the hot cylinders had been allowed to cool by cutting off the steam. The injury to the plaintiff occurred on the 2d day of August, 1892. She had first worked in the defendant's factory, in the tarletan department, in 1888, for four or five months, after which she left defendant's employ. She subsequently returned to work in the crinoline department, and remained there from February to August, 1890. Again she entered defendant's employ in April, 1892, continuing therein until the time of the accident. During her last term of employment she worked until the middle of June in the tarletan department, and the remainder of the time in the crinoline department. What the character of the plaintiff's duty in the tarletan department was, does not appear. When the plaintiff worked on the crinoline, in 1890, there was a man who attended to the cylinders, or cans; and she testified that during the last term of her employment she complained to the defendant of the necessity of having a man to attend to the machine, and the defendant had promised one should be had.

The narrative given by the plaintiff of the occurrence of the accident is this: At about 11 o'clock in the morning the defendant came into the room in which the plaintiff was working, stood behind her back, and said, "This is a damned pretty way the work is going on here!" "Well," said she, "I can't help it." He said: "The cans ought to be cleaned. They are in no condition to run goods in." She said: "They were cleaned Saturday night, but have not been run since." He said, "Well, they must be cleaned." The defendant looked very angry as he spoke. He sent no one to clean the cans. So the plaintiff, after the lunch hour, and about 2 o'clock, began to clean the cans with rags. At this time the cans were in motion, and the cloth passing through them. While cleaning the cans, plaintiff's hand was caught between the revolving cylinders and severely burned. The plaintiff was asked if she understood the defendant as directing her to clean the cans; why she did not act immediately on the defendant's direction; what was told her by her co-employés during the lunch hour. These questions were excluded, and the plaintiff excepted. The defendant wholly denied the interview between the plaintiff and himself. We think that on this evidence the jury could have found that the defendant directed the plaintiff to clean the cans, though we are by no means prepared to say that the defendant's language or conduct could be construed as an order to clean the cans while the cloth was passing through them, or while the work was going on. There was a lever by which the motion or operation of the machine could be at once stopped, and the plaintiff understood its use. But, for the argument, it may be conceded that the jury might have found, on the evidence, a direction to clean while the work was going on, and we shall examine the alleged liability of the defendant on that assumption. The appellant claims that the defendant was at fault in three respects: That the defendant failed to furnish a sufficient number of fellow servants to aid the plaintiff to discharge her duties safely; that he failed to make and promulgate adequate rules for safely operating the machine at which the plaintiff worked; that he allowed the plaintiff, being a female

under 21 years, to clean the machine while in motion, contrary to the factory act (Laws 1892, c. 673).

We cannot see how the injury to the plaintiff can be said, in any proper use of language, to have occurred from the want of a sufficient number of co-employés. Had there been one or more men in her department, they could not have saved her from the accident, as long as she engaged in the work of cleaning the machine. Of course, if there had been men present, one of them, and not the plaintiff, might have been set at the task. If this is the sense in which it is claimed that there was an insufficient number of co-employés, the point hardly requires serious discussion.

Nor can we see that rules could in any wise have contributed to the safety of the plaintiff. Her injury occurred, not from any action, or failure to act, on the part of her fellow servants, which proper rules might have prevented, but from the inherent danger of a work in which she was the sole actor. The danger was obvious. The plaintiff had been engaged in work at this machine for six months during 1890, and for some six weeks prior to the accident. The operation of the machine had become entirely familiar to the plaintiff, by the length of her service. Instruction could have given her no more knowledge on the subject. In this respect the case falls entirely within those of Hickey v. Taaffe, 105 N. Y. 26, 12 N. E. 286; Crown v. Orr, 140 N. Y. 450, 35 N. E. 648.

The last ground on which it is sought to rest the liability of the defendant is the violation of the factory law. Section 8 provides, "No person under eighteen years of age and no woman under twenty-one years of age shall be allowed to clean machinery while in motion." Laws 1892, c. 673. If the defendant directed the plaintiff to clean the dryer when in motion, he certainly violated the statute. But the answer to this claim is that plaintiff knowingly entered upon the forbidden task, and thereby waived the benefit of the statute. The main reliance of the plaintiff is based on Simpson v. Rubber Co., 80 Hun, 415, 30 N. Y. Supp. 339, where the general term of this department held that the statutory protection for the benefit of employés, enacted by the factory law for reasons of public policy, could not be waived. That case, however, has been entirely overruled by the court of appeals in Knisley v. Pratt, 148 N. Y. 372, 42 N. E. 986. In the opinion in the latter case is written:

"The factory act, it is said, is passed to regulate the employment of women and children, and imposes upon the employer certain duties, and subjects him to specified penalties in case of default; and a sound public policy requires the rigid enforcement of this act, and it would contravene that policy to permit an employé, by implied contract or promise, to waive the protection of the statute. We think this proposition is essentially unsound, and proceeds upon theories that cannot be maintained. * * * There is no rule of public policy which prevents an employé from deciding whether, in view of increased wages, the difficulties of obtaining employment, or other sufficient reasons, it may not be wise and prudent to accept employment subject to the rule of obvious risks. The statute does, indeed, contemplate the protection of a certain class of laborers; but it does not deprive them of their free agency, and the right to manage their own affairs."

It may be alleged that the Knisley Case is in turn overruled, in principle, by the decision on the constitutionality of the Sunday bar-

bering act. People v. Havnor, 149 N. Y. 195, 43 N. E. 541. In the prevailing opinion there delivered, Judge Vann writes:

"It is to the interest of the state to have strong, robust, healthy citizens, capable of self-support, of bearing arms, and of adding to the resources of the country. Laws to effect this purpose, by protecting the citizen from overwork, and requiring a general day of rest to restore his strength and preserve his health, have an obvious connection with the public welfare. Independent of any question relating to morals or religion, the physical welfare of the citizen is a subject of such primary importance to the state, and has such a direct relation to the general good, as to make laws tending to promote that object proper under the police power, and hence valid under the constitution. * * * As Mr. Tiedeman says in his work on Police Powers: 'If the law did not interfere, the feverish, intense desire to acquire wealth, * * * inciting a relentless rivalry and competition, would ultimately prevent, not only the wage earners, but likewise the capitalists and employers themselves, from yielding to the warnings of nature, and obeying the instinct of self-preservation, by resting periodically from labor.' Tied. Police Powers, 181. As barbers generally work more hours each day than most men, the legislature may well have concluded that legislation was necessary for the protection of their health."

It is difficult to reconcile the doctrines of public policy and governmental regulation declared in these two cases. Certainly, if judged by the supreme test of virility of citizenship,—the ability to successfully defend their country against aggression,—the Germans can claim to stand the equal of any European people during the last half century. Yet in Germany our American Sabbath is substantially unknown. While to the humblest intelligence the injury done the state by the maiming and deforming of its citizens must be apparent. But, on whatever contrariety in principles these decisions proceed, we feel bound to regard the decision in each case as conclusive on the question there involved. We can imagine no answer to the questions excluded by the trial court which would place the case in a more favorable aspect than that which we have assumed for it in this discussion. It is therefore unnecessary for us to deal at any length with the propriety of the rulings of the trial court in these respects. In our opinion, the evidence called for by the questions was properly excluded.

The judgment and order appealed from should be affirmed, with costs. All concur.