THOMPSON v. CARY MFG. CO.

(Supreme Court, Appellate Division, First Department. June 21, 1901.)

MASTER AND SERVANT—DANGEROUS MACHINERY—PERSONAL INJURIES—ASSUMP-
TION OF RISK.

Plaintiff was injured while engaged in operating one of defendant's
machines for cutting out pail clasps from strips of steel. He had per-
formed that duty for several months prior to the accident. The power
was communicated to the machines by a belt, which was pushed off
when a change of punches or dies was needed. The machine was
stopped to make such change, and, when ready to start, plaintiff applied
to the foreman, whose duty it was to put on the belt, to start the ma-
chine, and the latter refused, saying that he did not have time, and that
if plaintiff wanted it on he could put it on himself. Plaintiff endeavored
to put on the belt in the manner he had seen the foreman do, when he
was caught and injured by the machinery. There was no evidence of
a defect in the machine. Plaintiff testified that he endeavored to keep
the belt away from a certain collar and a set screw, as he knew, if it
was caught there, it would cause trouble. It did not appear to what
specific direct cause the accident was to be ascribed. Held, in an action
for damages, that plaintiff could not recover, he having assumed the
risk.

McLaughlin and Hatch, JJ., dissenting.

Appeal from trial term, New York county.

Action by Clarence J. Thompson, a minor, by Ida M. Roode, his
guardian ad litem, against the Cary Manufacturing Company. From
an order dismissing the complaint, and from an order denying a
motion for a new trial, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN,
PATTERSON, and LAUGHLIN, JJ.

J. A. Hodges, Jr., for appellant.
F. V. Johnson, for respondent.

PATTERSON, J. Looking at the evidence, as it appears in the
record before us, in the most favorable light for the plaintiff in
which it can be regarded, we are forced to the conclusion that the
lamentable accident from which he suffered most serious injuries
was one resulting from his own imprudence, and for which the de-
fendant should not be held responsible. The plaintiff was an em-
ployé of the defendant, and it was his duty to superintend the oper-
ation of three machines for cutting out pail clasps from strips or
ribbons of steel, which, when placed in the machines, were passed
automatically through them. He had been engaged in the perform-
ance of that duty for several months prior to the accident. It was
necessary to stop the machines whenever the steel ribbons were
to be put in, and also when the punches or knives broke or required
sharpening. These machines were upon frames standing upon the
floor of a room in the defendant's factory. The power was com-
municated to them by a belt which passed over a pulley on a re-
volving shaft above the machines, and around a fixed pulley upon
a shaft forming part of the machines. These machines were so con-
structed that, when it was necessary to stop them for the purpose
of putting in a new steel ribbon, it could be done by means of a.

clutch; but when knives or punches were to be removed, or in any way became broken, or when they or the dies needed grinding, or a driving rod was broken, they were stopped by pushing the belt off. There was no loose pulley, and there were set screws on the revolving shaft. On the morning on which the accident occurred one of the machines was stopped in order that new punches and a new die might be put in. At about 20 minutes to 1 the machine was ready to start. The plaintiff went to a Mr. Brown, who was the foreman in charge of the room, and asked him to put on the belt, which Brown did by climbing upon the machine, standing on top of the driving arms, and putting the belt onto the pulley fixed on the revolving shaft. About 3 o'clock in the afternoon the machine was again stopped to grind down new punches or dies. When those had been put in, the plaintiff went to Mr. Brown, and asked him to put the belt on, and received the reply, "Don't bother me; I have no time." The plaintiff then went away, and about 15 or 20 minutes afterwards returned to Brown, and asked him again to put the belt on, and Brown answered, "Put the belt on yourself, or let the damn thing go to hell." Thereupon Brown went away to the toilet room, and did not return until after the accident happened. After Brown retired, the plaintiff, in imitation of what he had seen Brown do, mounted the machine, stood upon the driving arms, reached up to the revolving shaft, and attempted to put the belt over the pulley on that shaft, and in doing so his wrist was caught, his arm was torn off, and he fell upon the machine, fracturing both his legs. He has become maimed and crippled for life.

No instruction was given to the plaintiff concerning the proper method of working or using these machines before he was set to work upon them, and we will assume it to have been proven that the absence of a loose pulley on the machine, and the presence of set screws in the shaft near the fixed pulley on that shaft, constituted defects in the machinery, and were violations of the factory act, although we do not so decide. But it is apparent from the plaintiff's own testimony that he well knew the condition of the machinery. He knew there was no loose pulley on the machine, and he gives a minute description in his testimony concerning the set screws on the revolving shaft. It is not quite clear to what specific direct cause the accident is to be ascribed, but it is clear that the danger to which the plaintiff was exposed was in starting the machine by putting the belt over the pulley on the revolving shaft, and that the accident occurred from something relating to the condition of that shaft, and the pulley and the belt at that shaft. The plaintiff testifies that while he was standing on the machine he tried to keep the belt away from the collar and a set screw, and he knew that if it got caught there it would cause trouble, and therefore he tried to keep it away, and he thought he had done so.

It is quite plain that the plaintiff knew of the situation and condition of the machinery, and, that being so, he, voluntarily undertaking to start it as he did, stands in the position of one knowing and appreciating a danger, thus voluntarily assumed, and therefore the liability under the factory act (Knisley v. Pratt, 148 N. Y. 372,

42 N. E. 986, 32 L. R. A. 367), or under the general rule of law, is not to be fixed upon the defendant, for the plaintiff himself is primarily responsible for the accident. Here we find the plaintiff cognizant of peril to which he might be exposed, performing an act which he was under no obligation to do, and which it was not within his duty to perform, and which he was not directed nor in any sense compelled to perform. He was working, not by day's wages, but his pay was regulated by the quantity of work turned out by the machines, and, in his evident anxiety to increase his earnings, he applied to the foreman to put on the belt so that the machine might be set working. He applied to the person whose duty it was to put on that belt, and, when that person refused, the plaintiff was not directed or required to put it on himself. He was simply left the choice of doing it himself or letting it remain undone. All the evidence points unmistakably to the conclusion that this unfortunate plaintiff assumed an obvious risk of his own volition, and the case is thus brought within the rule announced in Crown v. Orr, 140 N. Y. 450, 35 N. E. 648; Knisley v. Pratt, 148 N. Y. 372, 42 N. E. 986, 32 L. R. A. 367; White v. Lithographing Co., 131 N. Y. 631, 30 N. E. 236; Hickey v. Taaffe, 105 N. Y. 26, 12 N. E. 286; De Young v. Irving, 5 App. Div. 499, 38 N. Y. Supp. 1089. There was nothing that could have been properly left to the jury on the evidence introduced by the plaintiff, and in this view of the case it becomes unnecessary to consider other questions that have been argued.

The judgment and order appealed from must be affirmed, with costs. All concur, except McLAUGHLIN and HATCH, JJ., who dissent.