CHRISTOPHER BURNS, Respondent, *v.* NICHOLS CHEMICAL COMPANY, Appellant.

*Injury to an employee from a fall through an elevator shaft having no guard rails — risks assumed by him.*

In an action to recover damages for personal injuries sustained by the plaintiff while employed in the defendant's factory in consequence of his falling through an elevator opening in a platform at the factory, which opening was not protected by a guard rail as required by an ordinance of the city in which the factory was located, it is error for the court to instruct the jury that the plaintiff did not assume the obvious risks of his employment until the defendant had performed all the duties that the law imposed upon it, and that, as it was the defendant's duty to put up guard rails, the plaintiff did not assume the risk of their absence until the defendant had performed such duty.

APPEAL by the defendant, the Nichols Chemical Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Queens on the 19th day of April, 1901, upon the verdict of a jury for $900, and also from an order entered in said clerk's office on the 11th day of May, 1901, denying the defendant's motion for a new trial made upon the minutes.

*Charles C. Nadal* [*George O. Redington* with him on the brief] for the appellant.

*William J. Bogenshutz,* for the respondent.

GOODRICH, P. J. :

On June 17, 1900, after daylight, the plaintiff was injured by falling through an elevator opening in a platform at the defendant's factory in the borough of Queens. He has recovered a judgment, from which, and from the order denying a new trial, the defendant appeals.

It appeared by the evidence of the plaintiff that the platform in question is of iron and about fifty feet square. It was used by workmen in the operation of the defendant's business, elevators passing through it. There are trap doors in the platform, five or six feet square, which open and close, and when closed are level with and compose a part of the floor. There are no guards about the opening through which the plaintiff fell. He had been in the service of the defendant about three months and had been accustomed during that time to work on this platform. There were no ladders or other means of access to the platform except the elevators, and the plaintiff was in the habit of using the elevators in going to and from the platform and had used the one in question. He knew that there was no guard rail about the opening. While walking across the platform he slipped near the opening and fell through to the floor below.

The plaintiff offered in evidence an ordinance of the city, providing that elevator openings like the one in question "shall be provided with and protected by a substantial guard or gate, and with such good and sufficient trap doors as may be directed and approved by the Department of Buildings; * * * Such guards or gates shall be kept closed at all times, except when in actual use, and the trap doors shall be closed at the close of the business of each day."

At the close of the plaintiff's evidence the defendant moved to dismiss the complaint upon the ground, among others, "That the plaintiff assumed the risk of the conditions that existed at that place having full knowledge of the fact that there were no guards about the elevator." The motion was denied and the defendant excepted.

It appeared by the defendant's evidence, and this was not rebutted, that at the time of the accident another workman was moving the elevator up towards the platform, and that it had been moved up two feet when the plaintiff fell. The motion to dismiss

was renewed at the close of all the evidence and again denied, and exception was taken.

The defendant requested the court to charge the following : " An employee in accepting service with a knowledge of its character, the dangers of which are apparent and from which he might be liable to receive injury, assumes the risks incident to the employment, and he cannot recover damages from his employer for injuries resulting from such dangers."

" If the jury find that the elevator in question was being operated in the customary and usual manner, and if the plaintiff was well acquainted with the manner of using the elevator, he must be held to have assumed the risks incident to the use thereof, and the verdict must be for the defendant."

" If the plaintiff knew that there was* no guard rails around the elevator shaft, he must be held to have assumed the risks of the absence of the guard rails."

" Mr. Nadal : I ask your Honor to charge that the plaintiff in this action assumed the risk of the obvious conditions that existed at the time of the accident."

The court refused to charge except as already charged. In the main charge appeared the following : " Then comes in the other principle which has been invoked on the part of the defendant, namely, that a workman assumes the ordinary and obvious risks which are incident to the employment itself, or which results* from the dangerous environment into which the workman knowingly enters, provided the master has done all that his duty demanded of him with respect to securing the safety of his workmen. If this master did its duty as to providing a reasonably safe place for this workman, then, as the plaintiff took the risks of his employment, he cannot recover. If the master did not do its duty in that respect, then you may find negligence on its part, and if you so find, and also find freedom from negligence on the part of the plaintiff, you may render a verdict for the plaintiff. And you may find that there were no risks of the employment involved here if you find that the master failed in its duty to the plaintiff."

Exception was taken to the charge and the refusal.

*Sic.

The effect of the requests was to have the jury instructed that the plaintiff assumed the obvious risks of the situation, and by refusal the court instructed them that the plaintiff did not assume the obvious risks unless and until the defendant had performed all the duties that the law imposed upon him ; that as it was the defendant's duty to put up guard rails the plaintiff did not assume the risk of their absence until the master had done its duty.

There is a clear distinction between risks of service and obvious risks. The rule of law is well expressed in *Knisley* v. *Pratt* (148 N. Y. 372), where the plaintiff was injured while cleaning a machine in motion, by reason of his hand being caught between cog wheels which were unguarded, contrary to the provisions of the Factory Act (Laws of 1886, chap. 409, as amd. by Laws of 1890, chap. 398). The court, speaking through Judge EDWARD T. BARTLETT, said (pp. 377, 379) : " The defendants are chargeable, therefore, with one omission only under the statute, viz., a failure to properly guard the cog wheels of the punching machine. In order to sustain the judgment in favor of plaintiff it is necessary to hold that where the statute imposes a duty upon the employer, the performance of which will afford greater protection to the employee, it is not possible for the latter to waive the protection of the statute under the common-law doctrine of obvious risks. We regard this as a new and startling doctrine, calculated to establish a measure of liability unknown to the common law, and which is contrary to the decisions of Massachusetts and England under similar statutes. It should be remarked at the outset that the Factory Act in this state does not, in terms, give a cause of action to one suffering an injury by reason of the failure of the employer to discharge his duty thereunder.

" An action for such injury is the ordinary common-law action for negligence, and subject to the rules of the common law. (*Caswell* v. *Worth*, 5 Ellis & Blackburn, 855.) The principle contended for seems to rest, if it can be maintained at all, upon a question of public policy. The Factory Act, it is said, is passed to regulate the employment of women and children, and imposes upon the employer certain duties and subjects him to specified penalties in case of default; that a sound public policy requires the rigid enforcement of this act, and it would contravene that policy to permit an employee, by implied contract or promise, to waive the protection

of the statute. We think this proposition is essentially unsound, and proceeds upon theories that cannot be maintained. * * * *We are of opinion that there is no reason in principle or authority why an employee should not be allowed to assume the obvious risks of the business as well under the Factory Act as otherwise."*

*Freeman* v. *Glens Falls Paper Mill Co.* (70 Hun, 530; affd., without opinion, 142 N. Y. 639) was an action based upon the failure of the defendant to maintain a trap or automatic door at an elevator opening, as prescribed by statute. (Laws of 1886, chap. 409, § 8, as amd. by Laws of 1887, chap. 462.) The court had charged the jury that the statute had no sort of bearing upon the case if the jury should find, as they must find, on the evidence, that the plaintiff's intestate knew that the elevator was not provided with automatic doors, and that he knew what protection there was when he accepted the employment. This was held not to be error. The court added (p. 535): "The absence of a door from the well was apparent, and must have been well known by plaintiff's intestate; he worked there for weeks before the happening of the accident, used the elevator daily and several times a day; he knew of and was instructed what to do with the device that took the place of a door; it must be held that it was satisfactory to him, and that he waived the full and complete performance of the duty which defendant owed to him, and that he voluntarily assumed the risks incident to the absence of the door." (Citing numerous cases.)

One other citation will obviate the necessity of further reference to the authorities. In *Crown* v. *Orr* (140 N. Y. 450, 452), Judge O'BRIEN, speaking for the court, said: "The master does not insure the servant against all accidents and mishaps that may befall him in the business. The servant, when he enters into the relation, assumes not only all the risks incident to such employment, but all dangers which are obvious and apparent. * * * If he voluntarily enters into or continues in the service without objection or complaint, having knowledge or the means of knowing the dangers involved, he is deemed to assume the risk and to waive any claim for damages against the master in case of personal injury to him."

Under these authorities, the charge and refusal constituted reversible error, because the plaintiff assumed the risk of obvious conditions which existed at the time of the accident. One of these

conditions was the absence of guard rails about the elevator open-ing, and such absence is claimed by the plaintiff to have been a proximate cause of the accident.

It is unnecessary to consider whether the accident was occasioned by the negligence of a fellow-servant in leaving the trap door open.

The judgment and order should be reversed and a new trial granted.

BARTLETT, HIRSCHBERG, JENKS and SEWELL, JJ., concurred.

Judgment and order reversed and new trial granted, costs to abide the event.

