(80 App. Div. 465.)
## OBANHEIN v. ARBUCKLE.

(Supreme Court, Appellate Division, Second Department. March 26, 1903.)

1. MASTER AND SERVANT—DEFECTIVE APPLIANCES—KNOWLEDGE OF DEFECT—PROMISE TO INDEMNIFY—FORM OF ACTION.

Where a servant, knowing that his tools are defective, is induced to continue work by the master's promise to shortly supply proper tools, and meanwhile to indemnify the servant for any injury, and the servant sustains injuries from the defective tools, any action by him against the master for damages must be in tort for the negligence, and not on the promise.

Woodward, J., dissenting.

Exceptions from Trial Term, Kings County.

Action by John Obanhein against John Arbuckle. Judgment of dismissal, and plaintiff excepts. Reversed.

James D. Bell, for plaintiff.
Charles C. Nadal, for defendant.

HIRSCHBERG, J. The learned counsel for the plaintiff admits that he can find no decision in point, and my research has been equally unavailing. A recovery will depend upon the right of a servant to maintain an action in tort for damages resulting from negligence on the part of the master in failing to furnish safe tools and appliances, where the servant, having full knowledge of the defects, is induced to continue work by the master's promise to soon supply safe and proper tools and appliances, and meanwhile indemnify the servant for any incidental injury. The question presented is whether, in case of injury, the action for damages must be on the contract, or may be in tort.

No question is raised as to the sufficiency of the promise, or as to the authority of the foreman, by whom it is alleged that it was made, to bind the defendant thereby. While the proof might perhaps be stronger and clearer in both respects, it will be assumed that it was sufficient to justify a finding by the jury that the promise was intended to include compensation for such personal injuries as the plaintiff has sustained, and that the foreman was duly authorized to make the promise on the defendant's behalf. The injuries sustained by the plaintiff resulted from the use of a defective saw or saws in preparing lumber for the construction or repairing of a large sailing vessel, and at the time of the accident they had been used by him three or four weeks, under constant complaint by him of their defective condition, met by as constant assurance from the foreman that new ones would be supplied at once, and that he would be "taken care of" in case of accident. That, independently of the promise to take care of the plaintiff in the event of injury, no action would be maintainable, may be conceded. Hannigan v. Smith, 28 App. Div. 176, 50 N. Y. Supp. 845; McCarthy v. Washburn, 42 App. Div. 252, 58 N. Y. Supp. 1125; Spencer v. Worthington, 44 App. Div. 496, 60 N. Y. Supp. 873. In the recent case of Rice v. Eureka Paper Co., 70 App. Div. 336, 75 N. Y. Supp. 49, a thorough and discriminating examination of the conflicting authorities by Mr. Justice McLennan resulted in a decision, by a majority vote, that the mere promise by the master to remedy the defects

complained of would not sustain a recovery, since the servant would be deemed to have assumed the risk incident to the situation pending the fulfillment of the promise. Mr. Justice Spring, however, writing for the minority, aptly suggested (page 357, 70 App. Div., and page 64, 75 N. Y. Supp.) that if to the promise to repair or to supply safe machinery or tools the additional fact be added that the master told the servant that, "if he would stay and work, he, the master, would be responsible for any injuries sustained by reason of the defect," the doctrine of assumption of risks would not be applicable.

The contention of the defendant is that, conceding the making of the promise to indemnify, the sole remedy at law is an action upon contract for the breach, but that no action in tort can be maintained for the negligence in which the promise had its origin. It is true that the reciprocal duty to exercise care which is enjoined in the relation of master and servant is not in itself contractual, but is imposed by law; but it is equally true, as evidenced by the ground of the decision cited, that the sole reason why the servant has not been permitted to recover for the master's negligence, where he, the servant, was aware of its existence and of the consequences likely to result from it, is that the risk was assumed by him, and that the stipulated wages consequently constituted the only compensation for exposure to the risk which was contemplated by the parties. The effect of the master's promise to pay damages in case of injury is a waiver of the right to assert as a defense the fact of the assumption of the risk by the servant, while at the same time it is tantamount to the actual assumption of such risk in respect to the financial consequences of his negligence by the master himself as the conscious wrongdoer. Certainly the consequences apprehended by both are the consequences of the master's conceded negligence in failing to fulfill a duty imposed upon him by law, and the plain assurance given to the servant is that, if he will use the defective appliance in his master's service until a safer one can be substituted, it shall be at the master's risk so far as concerns the right to compensation for the neglect of duty which lies at the foundation both of the injury inflicted and of the remedial action. While there could be no recovery save for the promise, the recovery is not upon the promise, but because of the negligence which occasioned it. In other words, the gravamen of the action is the master's negligence, and not his promise to pay for it. No question of contributory negligence is involved, for want of care in the manner of using the defective appliance contributing to the accident would undoubtedly bar a recovery. But there is an essential difference between contributory negligence and the assumption of risks, which was pointed out in Dowd v. N. Y., O. & W. Ry. Co., 170 N. Y. 459, 470, 63 N. E. 541. The assumption of risks of service operates as a waiver of the negligence of the master, and the burden of proving such waiver rests upon the latter. He cannot successfully bear that burden where he has expressly agreed to compensate his servant for the injuries incident to the risk, especially where the risk has been created by his own conceded negligence.

The standard of duty imposed by law in the different contractual relations of life varies in degree from ordinary care, as in the relation

of master and servant, to extreme vigilance, as in the case of common carriers of passengers for hire. In no case, excepting possibly that of the carrier of merchandise for hire, is the duty absolute, such as is involved in the obligation of an insurer or guarantor, but in all cases failure of duty is regarded as actionable negligence. Were the standard of care in any given case so high, or the measure of duty so exacting, as to amount to an absolute insurance from personal harm, it would not be doubted that a negligent failure would constitute a tortious wrong. The case of insurance of property against fire, etc., is not analogous, for the insurance there is against the negligence of the insured, and not of the insurer. But in this case, as has been seen, the promise does not amount to insurance against the servant's negligence, but only to indemnity so far as concerns the results of the master's negligence alone. While the legal rule of liability imposes on him no higher duty than that of exercising ordinary care, he would unquestionably be liable in an action for negligence if the law enjoined on him the higher duty of an insurer or guarantor of his servant's safety, and it is difficult to see why he may not logically be also liable in an action for negligence where he voluntarily becomes in some degree the insurer or guarantor of such safety by the precise terms of the contract of employment.

The learned trial justice dismissed the complaint upon the theory that an action for breach of contract alone would lie, ordering the exceptions to be heard at the Appellate Division in the first instance, and while the question presented is novel, and by no means free from doubt, it follows from the view taken that the plaintiff's exceptions should be sustained, and his motion for a new trial granted.

Plaintiff's exceptions sustained, and motion for new trial granted, costs to abide the event.

GOODRICH, P. J., and BARTLETT, J., concur.

JENKS, J. I concur in the result reached by HIRSCHBERG, J. His opinion summarizes the facts, and states that the question presented is "whether in case of injury the action for damages must be on the contract or may be in tort." Dowd v. N. Y., O. & W. R. R. Co., 170 N. Y. 459, 63 N. E. 541, decides that the doctrine of assumed risks rests upon a contract impliedly made to take the risks, and that the compensation is presumed to be adjusted on that basis. If the master, instead of standing upon the benefit of this implied contract, chose to forego the benefit by making a contract for his liability to waive the defense of assumed risks, I can see no legal objection to such a course. As a result, the servant may sue in tort and recover, despite the fact that he assumed the risk.

I do not concur with WOODWARD, J., that public policy prohibits such a contract. In the Dowd Case, supra, the court cites from its opinion in Knisley v. Pratt, 148 N. Y. 372, 42 N. E. 986, 32 L. R. A. 367, as follows:

"There is no rule of public policy which prevents an employé from deciding, whether, in view of increased wages, the difficulties of obtaining employment,

or other sufficient reasons, it may not be wise and prudent to accept employment subject to the rule of obvious risks."

If, then, it is not against public policy to accept such employment, how can it be said that a special contract that assures compensation from the master for injuries arising from the employment, notwithstanding the assumption of its risks, is against public policy? If public policy is not against the service in which the servant is afforded no compensation for accidents incident to it, provided the servant enters upon it with eyes wide open, how can it be said that the law is flouted, or that public interest is affected, if the servant, by the voluntary act of the master, can secure indemnity? Bailey on Liability of the Master cites the language of Jessel, M. R., in Printing and Numerical Registering Co. v. Sampson, L. R. 19 Eq. 462, 465, as follows:

"It must not be forgotten that you are not to extend, arbitrarily, those rules which say that a given contract is void as being against public policy; because, if there is one thing which more than another public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred. Therefore you have this paramount public policy to consider, that you are not lightly to interfere with this freedom of contract."

If the plaintiff depended upon the promise to establish a cause of action, then his case would not rest upon the violation of the duty of master to servant—the implied contract between them—but on an express contract whereby the master in effect insured against any accident solely due to the proper use of the defective tool. The plaintiff could not recover upon the promise by mere proof of the accident, but he must go further to show that the accident did not arise from any other cause, and that it was not contributed to by his own negligence. Phillips v. Michaels, 11 Ind. App. 672, 39 N. E. 669. In fine, if the liability of the master be thus established, the master will not escape it by proof of the assumption of the risk. Shearman & Redfield on Negligence (section 215) say: "If the master expressly promises to 'take all of the risks,' the servant may recover upon this promise, no matter how obvious the risk may be." Nelson, Ch. J., in Masters v. Stratton, 7 Hill, 101, says:

"Where the action is maintainable for the tort simply, without reference to any contract made between the parties, no objection can be raised on the ground that the plaintiff should have declared upon the contract; as, for instance, in actions against common carriers founded on the custom of the realm, and the like. But where the action is not maintainable without referring to a contract between the parties, and laying a previous foundation for it by showing such contract, there the plaintiff must proceed upon the contract, and a special action on the case will not lie."

Of course, in order to establish a breach of the contract, the plaintiff is bound, inter alia, to prove that the master furnished a defective saw, and that the accident was due to its use, and thus he would establish facts which show the negligence of the master aside from the express contract, but the fact that the action requires such proof to establish a breach of the contract does not make the action ex delicto.

WOODWARD, J. (dissenting). The plaintiff's complaint was dismissed at the close of his evidence, and he is entitled to every legitimate inference from the evidence upon this motion for a new trial. The question presented by the evidence, viewed in this light, is whether a servant may maintain an action in tort for damages resulting from negligence on the part of the master in failing to furnish safe tools and appliances, where the servant, having full knowledge of the defects, is induced to continue work by the master's promise to soon supply safe and proper tools and appliances, and meanwhile indemnify the servant for any incidental injury. The learned trial court has held, by dismissing the complaint, that this may not be done, and the plaintiff appeals to this court.

The plaintiff was a carpenter, 44 years of age, and had worked at his trade for 25 years. The complaint alleges that on the 25th day of May, 1899, the plaintiff was in the defendant's employ, engaged in running a circular saw, and that the defendant, in violation of his duty, furnished him with an unsafe and defective saw, which was liable to wabble or buckle, and that the defendant had notice of the defect. It further alleges that the defendant personally and by his superintendent told him to go on and use said saw; that another saw had been ordered to take the place of the one in use, and that it would be all safe and right to use said saw until the other one was received, "assuring and giving plaintiff to understand that if any harm should come to him by use thereof, while in the performance of his duties under the directions of the defendant and his foreman and superintendent, that he, the defendant, would be responsible for any damage that should come to him while so performing his duties." The complaint also alleges that the plaintiff relied upon said assurances, and, while in the performance of his duties in using said saw, it buckled by reason of its defective condition, and threw a piece of wood in such a way as to strike plaintiff's hand and bring it in contact with the saw, by reason of which he was seriously injured, etc. The evidence upon the trial shows that the plaintiff did not rely upon the assurances of the defendant as to the safety of the saw, whatever he may have done in respect to the alleged promise to compensate him for any damages he might suffer, for he testified in detail in reference to the saw, and that he repeatedly called attention to it and complained that it was dangerous. He understood, or claims to have understood, the dangers incident to the operation of a defective saw such as was given him by the master, and the theory of the action appears to be that while the plaintiff, knowing the defect as well or better than the master, could not recover under ordinary circumstances, yet the promise of the master to compensate him for any injuries he might receive operated as a waiver on the part of the master of the plaintiff's contributory negligence or assumption of the risk, and, these defenses being eliminated from the case, the plaintiff is entitled to recover for the tort of the master in neglecting to provide reasonably safe tools and appliances for the performance of the work for which the plaintiff was engaged. Whether the plaintiff recovers upon the tort or upon the contract is not very material; the mere form of the remedy need not cause us any very serious concern; but whether the plaintiff has a right of recovery at all is im-

portant, and we ought not to enlarge the law of negligence without serious consideration of the consequences which are to follow.

The broad question is presented in this case, by the conceded facts, whether a man, with full knowledge that he is incurring for himself and his fellow laborers a danger not legitimately connected with the work in hand, may rely upon the promise of the master that he will be indemnified for injuries resulting from this increased and unnecessary danger, and, upon the injury resulting, be permitted to recover upon this promise, either in an action in tort or upon the contract. The rule that a party may waive a rule of law or a statute, or even a constitutional provision enacted for his benefit or protection, is subject to the very important limitation that it must be a matter exclusively of private right, and involving no considerations of public policy or morals. Sentenis v. Ladew, 140 N. Y. 463, 466, 35 N. E. 650, 37 Am. St. Rep. 569, and authorities there cited. It certainly cannot be said that the maiming or killing of an individual is a matter exclusively of private concern, or that considerations of public policy are not involved in a contract which has for its object the reckless assumption of risks on the part of one individual, whose conduct may involve the lives and limbs of many. Suppose, for instance, that in a great factory the master knows that the boilers are defective, that their operation is a menace to the lives of all of his employés, and that this fact is known to the engineer; is it possible that the master, by a bargain with the engineer to take care of him in case of an accident, may continue to use these boilers without involving any considerations of public policy or morals, or that the fellow employés may be subjected to the risks of the negligence of a fellow servant? Society is interested in the preservation of the life, limb, and property of every member of the state, and its laws are designed not merely for the protection of the parties to a litigation, but for the general interests of justice. Sentenis v. Ladew, 140 N. Y. 467, 35 N. E. 650, 37 Am. St. Rep. 569. When the rule was established that the servant could not recover for the neglect of the master to provide reasonably safe tools and appliances where the danger was known and appreciated by the servant (Fitzgerald v. Connecticut River Paper Co., 155 Mass. 155, 161, 29 N. E. 464, 31 Am. St. Rep. 537, and authorities there cited), the public policy of the state was declared. It was intended that the right of the individual to recover should depend upon his own exercise of due care, and this was necessary, not only for his own preservation, but for the safety and welfare of his fellow laborers and third persons generally. The law makes it the duty of the master to provide a reasonably safe place for the servant to work; makes it his duty to provide reasonably safe machinery, tools, and appliances with which the labor is to be performed; and it imposes upon the servant the reciprocal duty of using reasonable care in the use of these appliances. The master and servant, by an agreement between themselves, cannot change the law, and the servant cannot, under a promise of the master to protect him, go on operating a machine which the servant knows to be in a defective and dangerous condition, involving

risks not necessarily incident to the performance of the work in hand, both to himself and third persons, and retain his right to recover for the negligence of the master in providing such defective machinery. It cannot be the policy of the law to encourage a reckless disregard of human life by permitting a person, who has knowledge of the dangers to which he is unlawfully exposed, to maintain an action in tort against the wrongdoer, who has promised, as a condition of his continued service under dangerous circumstances, to take care of him in case of injuries resulting. Contributory negligence is not an affirmative defense in an action for negligence; it is a condition precedent to the right of recovery at all that the plaintiff should show to the court that he has been free from negligence producing the accident, and the plaintiff and defendant cannot, by an agreement between themselves, so change the law as to give a right of recovery without establishing the facts necessary to such recovery. In other words, the master, by contracting with the plaintiff to continue at work, notwithstanding his neglect of a duty imposed by law, cannot give jurisdiction to the court to render a judgment in an action for negligence where the evidence does not show freedom from contributory negligence on the part of the plaintiff, any more than the consent of parties could give jurisdiction where the statute prohibited a judge from sitting in a cause if he was related to a party. In such a case it has been held that even consent could not confer jurisdiction, because the law was not designed merely for the protection of the parties to the suit, but for the general interests of justice. Oakley v. Aspinwall, 3 N. Y. 547; Sentenis v. Ladew, 140 N. Y. 467, 35 N. E. 650, 37 Am. St. Rep. 569. The law, by requiring the plaintiff to show his freedom from contributory negligence, has imposed upon him the duty of being free from negligence, not only that his own life and limbs may be preserved to society, but that he may not expose his fellow servants and third persons to the dangers which must result from collusion between master and servant in the use of dangerous and improper machinery and appliances; and, upon the broad ground that the contract alleged between the plaintiff and defendant is against sound public policy, the exceptions should be overruled, and judgment entered for the defendant.